IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| JOSE LUIS ACOSTA, *et al.*, | |
| Plaintiffs, | No. 22 C 1458 |
| v. | Judge Harry D. Leinenweber |
| BOARD OF TRUSTEES OF UNITE HERE HEALTH, *et al.*, | |
| Defendants. | |

**MEMORANDUM OPINION AND ORDER**

The Named Plaintiffs and bring this proposed class action suit on behalf of similarly situated current and former Unite Hire Health participants against Defendant Board of Trustees of UNITE HERE Health and Does 1 through 10 for multiple violations under the Employee Retirement Income Security Act (ERISA) statute. Defendants move to dismiss all counts pursuant to under Federal Rules of Procedure 12(b)(1) and 12(b)(6). (Dkt. No. 19).

For the reasons stated herein, Defendants' motion to dismiss is GRANTED IN PART AND DENIED IN PART.

I.   **BACKGROUND**

Accepting the allegations in the Complaint as true, the relevant facts are as follows.

1

Unite Hire Health (UHH) is a multiemployer employee welfare benefit plan as defined in ERISA. 29 U.S.C. § 1002(1). (Compl. at ¶ 18, Dkt. No. 1.) Pursuant to ERISA, UHH was created and is maintained pursuant to an Agreement and Declaration of Trust ("Trust Agreement"). (*Id.* at ¶ 19; Compl. Ex. 1, 1 PTF 1-66, Dkt. No. 1-1.) UHH is divided into approximately 16 to 19 functional benefit programs called "Plan Units." (*Id.* at ¶¶ 23-24.)

Defendant Board of Trustees is the "named fiduciary" of UHH as defined in ERISA section 402(a)(1), 29 U.S.C. § 1102(a)(1). (*Id.* at ¶ 21; Ex. 1, PTF 40.) Each trustee is a "plan fiduciary" of UHH as defined in ERISA section 3(21)(A), 29 U.S.C. § 1002(21)(A). (*Id.*)

The Named Plaintiffs are current and former participants in Plan Units 178, the "Los Angeles Plan Unit" and Plan Unit 278 covering Orange County and Long Beach. (Compl. ¶¶ 13-17, Dkt. No. 1.) Plan Unit 150 is the "Las Vegas Plan Unit."

Each Plan Unit has its own operating budget that is set, approved, and monitored separately by the Executive Committee of the Board of Trustees. (Complaint ¶¶ 24, 26; Ex. 1, PTF 6, 22.) UHH manages the assets of the Plan Units separately. (*Id.* at 23-26, 31 53.) To participate in UHH, an employer must, among other things, sign a Collective Bargaining Agreement (CBA) with a local union or participating agreement that obliges the employer to contribute to UHH at a rate greater than or equal to a minimum

2

contribution rate set by UHH; allow UHH to increase the contribution rate at least every three years; bind itself to the Trust Agreement; and ratify without notice acts taken by Trustees to effectuate service and administration. (*Id.* at 60-68.)

Pursuant to the Trust Agreement, Defendants' policy, referred to as "Minimum Standards," sets terms and conditions that must be included in any employer's CBA as a condition of participating in UHH. (*Id.* at ¶ 56; Ex. 2, PTF 67-79; Ex. 1, PTF 7, 35.) Even if a CBA is consistent with the Minimum Standards, "the Trustees may reject any agreement that they determine, at their sole discretion, to be detrimental to the interests of the Fund's Participants and Beneficiaries." (*Id.* at ¶ 72; Ex. 2, PTF 69.)

The Minimum Standards document refers to CBAs that require all increases to employee compensation be taken from a fixed pot shared with UHH as "bucket allocation" provisions or "allocated contribution rates." At least eight CBAs, including those to which several Plaintiffs are parties, use the "bucket allocation method." (Compl. at ¶ 87; Exs. 25-33, PTF 735-1133.) Under this scheme, every increase in contributions to UHH necessarily reduces participants' other compensation by the same amount. A decision by the union and employer to allocate to UHH less than it demands may result in Defendants' termination of health benefits. (*Id.* at ¶¶ 62, 84, 85; Ex. 2, PTF 69, 75.) The Complaint identifies seven CBAs that provide for predetermined contribution rates yet specify

3

that if UHH demands any more than the agreed-upon rates, the difference will be taken from employee wages. (*Id.* at ¶ 88; Exs. 34-40; PTF 1161-1498.) Other Plaintiffs are parties to CBAs with this method. (*Id.*)

"Self-insured" health plans are more expensive to administer than "fully-insured" health plans. (*Id.* at ¶ 46.) Under a self-insured plan, benefit claims (for example, the cost of a prescription) are paid directly from plan assets, whereas under a fully-insured plan, plan assets are used to pay premiums to an insurance company, which in turn pays benefit claims. (*Id.* at ¶¶ 46-49, 110, 127.) Participants in Plan Units 178 and 278 have a fully-insured benefit plan. (*Id.*) Plan Unit 150, also known as the Las Vegas Plan Unit, partially self- insured health benefits. (*Id.* at ¶¶ 89-90.) Participants in the Las Vegas Plan Unit received superior medical benefits, including the option for a free appointment at an "exclusive clinic." (*Id.* at ¶ 184.)

Over the six plan years covered by the Complaint, the annual administrative expenses allocated by Defendants to Plan Units 178 and 278 were between $1,058 per participant and $1,064 per participant. (*Id.* at ¶¶ 114, 116, 117, 132; Ex. 11, PTF 613; Ex. 12, PTF 636.) During the same period, the annual administrative expenses per participant allocated to the Las Vegas Plan Unit totaled between $531 and $582. (*Id.* at 183.)

4

The expenses did not appear to match the return on the spending; the better health plans were found with the lower administrative costs. (*Id.* at ¶¶ 114, 116, 117, 132, ¶ 183; Ex. 11, PTF 613; Ex. 12, PTF 636.)

In Plan Year 2018, UHH incurred overall administrative expenses at a rate of $853 per participant. Compl. 156. Administrative expenses of the average comparable self-insured multiemployer health plan were $719, and for the median comparable self-insured multiemployer health plan were $663. Compl. 154-56. The In 2019, UHH's rate was $899 per participant, while the average comparator spent $765 and the median $718. (*Id.* at 147-49.)

Plaintiffs bring two counts for violation of fiduciary duties of loyalty and prudence, pursuant to (ERISA §§ 502(a)(2), 502(a)(3), and 409; 29 U.S.C. §§ 1132(a)(2), 1132(a)(3), and 1109), specifically, the unfair allocation of administrative expenses in Count I and excessive administrative expenses in Count II. In Count III, Plaintiffs claim prohibited transactions in violation of ERISA § 406, 29 U.S.C. § 1106. Plaintiffs bring Count IV for violation of exclusive purpose rule of ERISA § 403, 29 U.S.C. § 1103. Plaintiffs bring Count V for restitution and disgorgement, pursuant to ERISA §§ 502(a)(2) and 502(a)(3), 29 U.S.C. §§ 1132(a)(2) and 1132(a)(3)).

Defendants filed a motion to dismiss all counts pursuant to under Federal Rules of Procedure 12(b)(1) and 12(b)(6).

5

## II. LEGAL STANDARD

*Standing*

Article III limits federal courts' jurisdiction to "cases" and "controversies." U.S. Const. art. III, § 2. Constitutional standing requires that the plaintiff has "(1) suffered an injury in fact, (2) that is fairly traceable to the challenged conduct of the defendant, and (3) that is likely to be redressed by a favorable judicial decision." *Spokeo, Inc. v. Robins*, 578 U.S. 330, 338 (2016) (cleaned up). "The party invoking federal jurisdiction bears the burden of establishing these elements." *Id.* at 561. "At the pleading stage, general factual allegations of injury resulting from the defendant's conduct may suffice, for on a motion to dismiss [courts] presume that general allegations embrace those specific facts that are necessary to support the claim." Lujan, 504 U.S. at 561 (internal citations and quotations omitted). "There is no ERISA exception to Article III." *Thole v. U.S. Bank, N.A.*, 140 S. Ct. at 1620, 1622.

*Failure to State a Claim*

To survive a motion to dismiss under Rule 12(b)(6), a complaint must state a claim to relief that is plausible on its face. *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). A claim has facial plausibility "when the plaintiff pleads factual content that allows the court to draw the reasonable inference

6

that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). A plaintiff's "[f]actual allegations must be enough to raise a right to relief above the speculative level on the assumption that all allegations in the complaint are true." *Twombly*, 550 U.S. at 555 (cleaned up). Presuming the truth of the facts alleged in the complaint and drawing all reasonable inferences in the plaintiffs' favor, a district court may consider documents attached to a motion to dismiss if the documents are referenced in the plaintiffs' complaint and are central to the claim. *Dean v. Nat'l Prod. Workers Union Severance Tr. Plan*, 46 F.4th 535, 543 (7th Cir. 2022).

"To take a claim of fiduciary duty violation from the realm of possibility to plausibility, a plaintiff must provide enough facts to show that a prudent alternative action was plausibly available, rather than actually available." *Hughes v. Nw. Univ.*, 2023 WL 2607921, at *8-10 (7th Cir. Mar. 23, 2023) (cleaned up); *see also Tibble v. Edison Int'l*, 575 U.S. 523 (2015) (Determining whether a plaintiff states plausible claims against plan fiduciaries for violations of ERISA's duty of prudence requires a context-specific inquiry of the fiduciaries' continuing duty to monitor investments and to remove imprudent ones.).

### III. ANALYSIS

*Standing*

7

Defendants argue that Plaintiffs lack the requisite standing for jurisdiction in federal court. To dispute that Plaintiffs suffered an injury in fact, Defendants argue that Plaintiffs failed to allege that their benefits were affected. However, Plaintiffs allege other injuries including lost wages. Defendant contends that Plaintiff's allegations of lost wages were untraceable to Defendants and otherwise conclusory. Defendants' finally argue that standing is foreclosed by the lack of redressability for lost wages.

Lost wages suffice as an injury for standing purposes, and Plaintiffs pled lost wages. Plaintiff explained, supported by exhibits, that every penny they give in contribution is one less penny of wages. *Cf. Thole v. U.S. Bank, N.A.*, 140 S. Ct. 1615, 1619 (2020) ("every penny of gain or loss is at the beneficiary's risk"). Plaintiffs explain how Defendants exert influence over the CBAs that instrumentalize this wage loss in tandem with Defendant's actions. The explanation is more than a theory; it is supported by agreements with these operative terms between UHH and employers. A defendant's actions need not be "the very last step in the chain of causation" to establish standing. *Bennett v. Spear*, 520 U.S. 154, 168-69 (1997). Instead, the traceability requirement may be satisfied even when the injury is "produced by [a] determinative or coercive effect upon the action of someone else." *Id.* at 169.

8

Defendants' attempts to fit these facts to *Thole v. U.S. Bank, N.A.*, 140 S. Ct. 1615, 1619 (2020). In Thole, the Supreme Court ruled that plaintiff participants in a defined-benefit plan lacked standing when the benefits plaintiffs received were not tied to the values of their accounts. Ultimately, the plaintiffs would be positioned the same whether they won or lost the lawsuit. The Court explained the distinction between a defined-benefit plan and a defined-contribution plan. In the latter, the benefits fluctuated in accord with the investment decisions. Here, Plaintiff alleged that the conduct of Defendants impacted their end of the bargain, including in terms of lost wages, higher cost-sharing and coinsurance payments, and less valuable health benefits.

***Counts I and II: Fiduciary Duties of Loyalty and Prudence***

Plaintiffs bring two counts for violation of ERISA's fiduciary duties of loyalty and prudence. In Count I, Plaintiffs claim unfair allocation of administrative expenses, and in Count II, Plaintiffs claim excessive administrative expenses, both pursuant to ERISA §§ 502(a)(2), 502(a)(3), and 409; 29 U.S.C. §§ 1132(a)(2), 1132(a)(3), and 1109.

Under the Employee Retirement Income Security Act of 1974 (ERISA), 88 Stat. 829, as amended, 29 U.S.C. § 1001 et seq., ERISA plan fiduciaries must discharge their duties "with the care, skill, prudence, and diligence under the circumstances then prevailing

9

that a prudent man acting in a like capacity and familiar with such matters would use in the conduct of an enterprise of a like character and with like aims." § 1104(a)(1)(B); *Hughes v. Nw. Univ.*, 142 S. Ct. 737, 739 (2022).

To state a breach of the fiduciary duty of prudence under ERISA, a plaintiff must plead "(1) that the defendant is a plan fiduciary; (2) that the defendant breached its fiduciary duty; and (3) that the breach resulted in harm to the plaintiff." *Allen v. GreatBanc Tr. Co.*, 835 F.3d 670, 678 (7th Cir. 2016). Plaintiffs do not dispute that the named Defendants are plan fiduciaries under 29 U.S.C. § 1002(21). Defendants argues that there was no breach because the allegations, taken as true, do not show that it acted imprudently. As discussed, *supra*, Plaintiffs pled plausible harm from this alleged breach.

The content of the duty of prudence turns on "the circumstances ... prevailing" at the time the fiduciary acts, 29 U.S.C. § 1104(a)(1)(B), so the appropriate inquiry will be context specific. *Fifth Third Bancorp v. Dudenhoeffer*, 573 U.S. 409, 425. The Seventh Circuit clarified that a pleading need not show that a prudent alternative was actually available; showing that an alternative prudential option was plausibly available sufficed. *Hughes v. Nw. Univ.*, 2023 WL 2607921, at *8-10 (7th Cir. Mar. 23, 2023).

Here, Plaintiffs showed that similarly situated funds accrued significantly lower administrative costs. This finding demonstrates not only consistency but some likelihood that the fiduciary failed to conduct regular reviews of its investment. *See Tibble v. Edison Int'l,* 575 U.S. 523, 528. Because the national average and median spend for was over ten percent lower across the board, the Court finds that it is plausible that this difference is explained by excessive administrative expenses, and alternative acceptable explanations appear indeed less likely. Additionally, the Court finds Plaintiff demonstrated irrational differences between the allocation of administrative expenses.

Therefore, Counts I and II survive Defendants' motion.

***Count III & IV: Exclusive Purpose Rule & Prohibited Transactions***

Plaintiffs bring Count III, prohibited transactions in violation of ERISA § 406, 29 U.S.C. § 1106, and Count IV, violation of exclusive purpose rule of ERISA § 403, 29 U.S.C. § 1103.

Subject to certain qualifications, "a fiduciary shall discharge his duties with respect to a plan solely in the interest of the participants and beneficiaries and ... for the exclusive purpose of ... providing benefits to participants and their beneficiaries." 29 U.S.C. § 1104(a)(1)(A)(i). This is known as the "exclusive benefit" rule. Halperin v. Richards, 7 F.4th 534, 545–46 (7th Cir. 2021). Then, 29 U.S.C. § 1106 implements the exclusive

11

benefit rule by prohibiting various types of self-dealing and other conflicts of interest. *Id.*

Defendants argue that Plaintiff failed to state a plausible claim for either count. Regarding the excessive purpose rule, Defendants dispute Plaintiffs' contention that Plan Units 178 and 278 are separate benefit plans from Plan Unit 150. The Trust Agreement does contradictory language regarding the agency of the Plan Units and their relation to each other. Still, plenty of the language there, and other allegations in the Complaint support Plaintiff's characterization.

Still, Plaintiffs must also allege facts calling into doubt Defendants' loyalty. Defendants argue that Plaintiffs failed to plead facts that support their allegation that UHH funds were used for anyone other than "participants in the plan and their beneficiaries," as is necessary for a violation of the exclusive purpose rule. Furthermore, Defendants argue that Plaintiffs failed to identify a single "prohibited transaction" and instead resorted to vague allegations that identify neither the "party in interest" and which part of the statute.

The Court agrees. Neither self-dealing nor any violation of the duty loyalty is presumed with a violation of the fiduciary duty of prudence. The claims are, of course, distinct and require different allegations. Absent specificity regarding self-dealing or other disloyal behavior, Plaintiff failed to state a claim for

12

either prohibited transactions or a violation of the exclusive purpose rule. Counts III and IV are dismissed.

### *Count V: Restitution and Disgorgement*

Plaintiffs bring Count V for restitution and disgorgement, pursuant to ERISA §§ 502(a)(2) and 502(a)(3), 29 U.S.C. §§ 1132(a)(2) and 1132(a)(3)). Defendants' arguments for dismissal of this count echo their arguments regarding standing. Furthermore, Defendants argue that Plaintiffs did not plead that Defendants have ever been in possession of funds belonging to Plaintiffs. Plaintiffs admit that they do not yet know the identities of all Defendants. The Court finds this issue is premature at this stage in litigation and declines to decide at this time.

### IV. CONCLUSION

Defendants' motion to dismiss (Dkt. No. 19) is GRANTED IN PART AND DENIED IN PART. In ruling on this motion, Defendants' Motion to Supplement Authority (Dkt. No. 26) was GRANTED and Plaintiff's Motion to Supplement Authority (Dkt. No. 29) was GRANTED.

_____
Harry D. Leinenweber, Judge
United States District Court

Dated: 3/31/2023