# IN THE UNITED STATES DISTRICT COURT
# FOR THE NORTHERN DISTRICT OF ILLINOIS, EASTERN DIVISION

| | |
|---|---|
| JOSE LUIS ACOSTA, *et al.*, | Civil Action No. 1:22–CV–01458 |
| Plaintiffs, | |
| v. | Honorable Harry D. Leinenweber |
| BOARD OF TRUSTEES OF UNITE HERE HEALTH, *et al.*, | |
| Defendants. | |

## DECLARATION OF KURT PETERSEN IN SUPPORT OF PLAINTIFFS' MOTION FOR CLASS CERTIFICATION

Michael D. Weiner (pro hac vice)
Benjamin M. O'Donnell (pro hac vice)
Nicole Grinstein (pro hac vice)
GILBERT & SACKMAN
A LAW CORPORATION
800 Wilshire Blvd.
Suite 1410
Los Angeles, CA 90017
(323) 938-3000
mweiner@gslaw.org
bodonnell@gslaw.org
ngrinstein@gslaw.org

Robert E. Bloch
Stephen A. Yokich
George A. Luscombe III
Elizabeth L. Rowe
DOWD, BLOCH, BENNETT, CERVONE, AUERBACH & YOKICH LLP
8 South Michigan Ave. – 19th Floor
Chicago, IL 60603
(312) 372-1361
rebloch@laboradvocates.com
syokich@laboradvocates.com
gluscombe@laboradvocates.com
erowe@laboradvocates.com

*Attorneys for Plaintiffs*

I, Kurt Petersen, declare as follows:

1. I have personal knowledge of the facts stated in this declaration and, if called to do so, I could and would testify to these facts.

2. UNITE HERE Local 11 ("Local 11" or "Union") is a labor union which represents over 32,000 hospitality workers throughout Southern California and Arizona.

3. I have worked for UNITE HERE since 1995. From 1995 to 2017, my title was Organizing Director. In my role as an Organizing Director, I negotiated over a hundred collective bargaining agreements in hotels, food service, in Los Angeles, Orange County, Arizona.

4. Since 2017, I have served as a Co-President of Local 11. In my role as Co-President, I oversee the operation of the Union along with two other co-presidents. In my role as Co-President, I lead union negotiations with hotels, organizing campaigns at hotels, and other matters regarding members who work in hotels.

5. In my 29 years of experience at Local 11, I have been involved in negotiating over one hundred collective bargaining agreements between Local 11 and various employers. From 2016 until the present, I have been involved in negotiating more than 20 collective bargaining agreements between Local 11 and various employers under which the employer agreed to contribute to UNITE HERE Health ("UHH") Plan Units 178 and 278 in order to provide health benefits for covered employees.

6. Local 11 is the local union that represents hospitality and restaurant employees within the geographic areas covered by Plan Units 178 and 278.

7. Nearly all of the participants in Plan Units 178 and 278 from 2016 to the present work or worked under collective bargaining agreements negotiated by Local 11. There were no

1

other union locals that negotiated collective bargaining agreements to participate in Plan Units 178 and 278.

8. Each collective bargaining agreement involving Local 11 that provides or provided for benefits under Plan Units 178 or 278 also requires contributions to be made to UHH at a rate that UHH approves. Each such collective bargaining agreement generally provides a single employer contribution rate for all covered employees. Occasionally a collective bargaining agreement will provide different rates for workers in different sectors (e.g., hotel workers or event center workers), but even then all employees within a single sector have the same contribution rate.

9. In reality, UHH dictates contribution rates for the participating employers that Local 11 bargains with.

10. UHH won't provide benefits to Local 11 members unless Local 11 submits its collective bargaining agreements to UHH for approval before they are signed by Local 11 and the employer.

11. During the collective bargaining process with each employer, Local 11 generally requests from UHH the contribution rates that UHH is going to require for the term of the agreement. UHH's underwriting department then provides Local 11 with the contribution rates that Local 11 must negotiate with the employer.

12. These communications with UHH about contribution rates occur before Local 11 can conclude an agreement with any employer.

13. Sometimes, UHH has indicated that it has not projected contribution rates for the full term of a pending collective bargaining agreement and it has required Local 11 and the employer to add language allowing UHH to determine future contribution rates.

14. When I was negotiating collective bargaining agreements that provided for health benefits from UHH, I understood that if Local 11 failed to achieve the contribution rates that UHH specified, then our members could be denied healthcare.

15. Some collective bargaining agreements used a "bucket allocation" method, with UHH's approval. All of the hotel contracts in Plan Units 178 and 278 used a "bucket allocation" method.

16. Under a "bucket allocation" type of agreement, the employer agreed that there would be a fixed "bucket" of economic increases to the employees each year, but the contract did not specify how much of the increase would go to wages, UHH contributions, or other benefits like retirement contributions. For example, a contract might provide that on December 1, 2017 employees would receive a "bucket" of $1.03 per hour. This $1.03 per hour "bucket" had to be allocated to UHH's contributions first, if they required by UHH. The remainder could be allocated to employee wages and/or other benefits.

17. "Bucket allocation" agreements still require UHH's approval before they are executed by Local 11 and the employer.

18. Local 11 is notified by UHH each time it approves a contribution rate for Plan Units 178 and 278. For "bucket allocation" agreements, UHH periodically publishes the required contribution rates by emailing or mailing a letter to Local 11. For other agreements, UHH informs Local 11 of the approved rates while the agreement is still being negotiated, as described above in paragraphs 10 through 13. For agreements where UHH was unable to specify future rates at the time of negotiation, UHH notifies Local 11 of the required contribution rate by subsequent communication.

19. The healthcare benefits provided to employees from UHH are part of those employees' compensation.

20. In order to negotiate contribution rates that would satisfy UHH's minimum contribution rates, Local 11 often had to sacrifice other economic objectives such as higher wages and retirement contributions. If UHH's minimum contribution rates had been lower, Local 11 could have negotiated higher wages for its members.

21. Most of the Local-11 represented former participants of Plan Units 178 and 278 are now participants in a health and welfare plan called the Santa Monica UNITE HERE Health Benefit Trust Fund.

22. Some Local-11 represented employees still receive benefits from UHH in Plan Units 178 and 278.

I declare under penalty of perjury that the foregoing is true and correct. Executed on April 15, 2024 at Los Angeles, California.

_____
Kurt Petersen