**IN THE UNITED STATES DISTRICT COURT**
**FOR THE NORTHERN DISTRICT OF ILLINOIS, EASTERN DIVISION**

JOSE LUIS ACOSTA, *et al.,*

Plaintiffs,

v.

BOARD OF TRUSTEES OF UNITE HERE HEALTH, *et al.*,

Defendants.

Civil Action No. 1:22–CV–01458

Honorable Harry D. Leinenweber

# MEMORANDUM IN SUPPORT OF PLAINTIFFS' MOTION FOR CLASS CERTIFICATION

Michael D. Weiner (pro hac vice)
Benjamin M. O'Donnell (pro hac vice)
Nicole Grinstein (pro hac vice)
GILBERT & SACKMAN
A LAW CORPORATION
800 Wilshire Blvd.
Suite 1410
Los Angeles, CA 90017
(323) 938-3000
mweiner@gslaw.org
bodonnell@gslaw.org
ngrinstein@gslaw.org

Robert E. Bloch
Stephen A. Yokich
George A. Luscombe III
Elizabeth L. Rowe
DOWD, BLOCH, BENNETT, CERVONE, AUERBACH & YOKICH LLP
8 South Michigan Ave. – 19th Floor
Chicago, IL 60603
(312) 372-1361
rebloch@laboradvocates.com
syokich@laboradvocates.com
gluscombe@laboradvocates.com
erowe@laboradvocates.com

*Attorneys for Plaintiffs*

## TABLE OF CONTENTS


I. INTRODUCTION ........................................................................................ 1

II. FACTUAL BACKGROUND ............................................................................ 2

A. Defendant Is the Named Fiduciary of UHH, an ERISA-Regulated Health Plan ........................................................................................ 2

B. Named Plaintiffs Are Current and Former Participants in Plan Units 178 and 278 ........................................................................................ 3

C. Plan Units 178 and 278 Are Funded by Employer and Employee Contributions ........................................................................................ 3

D. UHH Gives the Las Vegas Plan a Two-Thirds Discount When Allocating Some Administrative Expenses to Plan Units ........................................ 4

E. The Effect of the Allocation Policy: Plan Units 178 and 278 Bear a Disproportionate Share of UHH's Administrative Expenses Compared to Plan Unit 150 ........................................................................................ 6

F. For All Relevant Years for Which Data Exists, UHH's Administrative Expenses Significantly Exceed Those of Comparable Multiemployer Plans......... 7

G. Administrative Expenses Are Ultimately Passed on to Participants ..................... 7

III. STANDARDS FOR DECIDING THIS MOTION ............................................ 8

IV. ARGUMENT ........................................................................................ 8

A. The Proposed Class Meets Each Requirement of Rule 23 .................................... 8

1. Numerosity: The Class Is at Least 7,513 Members ................................... 8

2. Commonality: The Question of Defendant's Breaches of ERISA's Fiduciary Duties Are Common to All Class Members ............................... 9

3. Typicality: The Representatives' Claims Are Typical............................. 10

4. Adequacy: The Class Representatives and Class Counsel Are Adequate ........................................................................................ 11

B. Certification Is Warranted Under Rule 23(b)(1).................................................. 12

C. Certification Is Also Warranted Under Rule 23(b)(3) ......................................... 13

1. Common Issues Predominate.............................................................. 13

2. A Class Action Is Superior to Individual Adjudication ........................... 14

V. CONCLUSION ........................................................................................................ 15

## TABLE OF AUTHORITIES

**STATUTES**


29 U.S.C. § 1002(1) .......... 2

29 U.S.C. § 1002(37) .......... 2

29 U.S.C. § 1102(a) .......... 2


**CASES**


*Allen v. GreatBanc Tr. Co.*,
835 F.3d 670 (7th Cir. 2016) .......... 9, 14

*Amchem Prod., Inc. v. Windsor*,
521 U.S. 591 (1997) .......... 13, 15

*Bell v. PNC Bank, National Ass'n*,
800 F.3d 360 (7th Cir. 2015) .......... 9, 13

*Boley v. Universal Health Servs., Inc.*,
337 F.R.D. 626 (E.D. Pa. 2021) .......... 11

*Brieger v. Tellabs, Inc.*,
245 F.R.D. 345 (N.D. Ill. 2007) .......... 9, 10

*Day v. Check Brokerage Corp.*,
240 F.R.D. 414 (N.D. Ill. 2007) .......... 8

*Dennis v. Greatland Home Health Servs., Inc.*,
591 F.Supp.3d 320 (N.D. Ill. 2022) .......... 10

*Eddlemon v. Bradley Univ.*,
65 F.4th 335 (7th Cir. 2023) .......... 8

*Howard v. Cook Cnty. Sheriff's Off.*,
989 F.3d 587 (7th Cir. 2021) .......... 10

*Hughes v. Nw. Univ.*,
595 U.S. 170 (2022) .......... 9

*In re Citigroup Pension Plan ERISA Litig.*,
241 F.R.D. 172 (S.D.N.Y. 2006) .......... 13

*In re Schering Plough Corp. ERISA Litig.*,
589 F.3d 585 (3d Cir. 2009) .......... 1, 9, 13

*Keach v. U.S. Tr. Co.*,
240 F.Supp.2d 840 (C.D. Ill. 2002) .......... 9

**TABLE OF AUTHORITIES**
**(Continued)**


*Keele v. Wexler*,
149 F.3d 589 (7th Cir. 1998) .... 9

*Messner v. Northshore Univ. HealthSystem*,
669 F.3d 802 (7th Cir. 2012) .... 8

*Neil v. Zell*,
275 F.R.D. 256 (N.D. Ill. 2011) .... 1, 13

*Nicholson v. Williams*,
205 F.R.D. 92 (E.D.N.Y. 2001) .... 11

*Orr v. Shicker*,
953 F.3d 490 (7th Cir. 2020) .... 9, 11

*Piazza v. Ebsco Indus., Inc.,*
273 F.3d 1341 (11th Cir. 2001) .... 8

*Tyson Foods, Inc. v. Bouaphakeo,*
577 U.S. 442 (2016) .... 14

*Vandehey v. Client Servs., Inc.*,
390 F.Supp.3d 956 (E.D. Wis. 2019) .... 11

*Vigus v. S. Illinois Riverboat/Casino Cruises, Inc.*,
274 F.R.D. 229 (S.D. Ill. 2011) .... 8

*Wagner v. NutraSweet Co.*,
95 F.3d 527 (7th Cir. 1996) .... 10

*Wal-Mart Stores, Inc. v. Dukes*,
564 U.S. 338 (2011) .... 9


**RULES & REGULATIONS**


Fed. R. Civ. P. 23(a) .... 8, 12

Fed. R. Civ. P. 23(b) .... 8

Fed. R. Civ. P. 23(b)(1) .... 8, 12, 13

Fed. R. Civ. P. 23(b)(1)(A) .... 13

Fed. R. Civ. P. 23(b)(1)(B) .... 13

Fed. R. Civ. P. 23(b)(3) .... 8, 13

Fed. R. Civ. P. 23(b)(3)(A) .... 15

## TABLE OF AUTHORITIES
## (Continued)


Fed. R. Civ. P. 23(b)(3)(B) ........................................................................................... 15

Fed. R. Civ. P. 23(b)(3)(C) ........................................................................................... 15

Fed. R. Civ. P. 23(b)(3)(D) ........................................................................................... 15

Fed. R. Civ. P. 23(g) ..................................................................................................... 12


**TREATISES**


Newberg and Rubenstein on Class Actions (6th ed.) .................................................... 12

Wright & Miller, 7AA Fed. Prac. & Proc. Civ. (3d ed. 2023)........................................ 8

# I. INTRODUCTION

Lawsuits claiming a breach of ERISA's fiduciary duties are "paradigmatic examples of claims appropriate for [class] certification." *In re Schering Plough Corp. ERISA Litig.,* 589 F.3d 585, 604 (3d Cir. 2009); *Neil v. Zell*, 275 F.R.D. 256, 267 (N.D. Ill. 2011) (collecting cases). This case alleges that Defendant Board of Trustees of UNITE HERE Health ("UHH") ("Defendant") breached ERISA's fiduciary duties when it incurred unreasonable and excessive administrative expenses, and when it unfairly allocated those expenses pursuant to its written allocation policy. Therefore, a class should be certified.

UHH is a health plan that divides its benefits into various "Plan Units" that each provide their own benefits and have their own income and expenses. Defendant adopted a written allocation policy which treats Plan Unit 150 ("Las Vegas Plan Unit") more favorably than all others by giving Plan Unit 150 a two-thirds discount on many types of administrative expenses. The difference is made up by the other Plan Units. The justification for this major discount has, in the words of a former UHH CEO, been "lost in the mists of time." Plaintiffs are current and former participants in Plan Units 178 and 278—Plan Units that were burdened with additional administrative expenses by virtue of the discount to Plan Unit 150. These expenses were passed on to the Named Plaintiffs in the form of direct employee contributions to UHH and higher employer contributions to UHH which were obtained at the cost of lower wages and other benefits for the class members.

UHH's administrative expenses overall are also unreasonably high in violation of ERISA's fiduciary duties. UHH's expenses substantially exceed those of comparable multiemployer health plans. The court has already "f[ound] that it is plausible that this difference is explained by excessive administrative expenses, and alternative acceptable explanations appear indeed less likely." Mem. Op. and Order, Dkt #31, p. 11.

Named Plaintiffs seek to certify a class of:

> All current and former participants in UNITE HERE Health Plan Unit 178 or Plan Unit 278, who are or were participants in such Plan Units at any point from March 21, 2016 through the date of judgment in this action.

FAC, Dkt #46 ¶ 17. The central issues in this lawsuit are whether UHH's overall administrative expenses and/or allocation of expenses to the Plan Units violate Defendant's fiduciary duties. All the class members are similarly affected by these policies and thus their claims all depend on whether Defendant has violated its fiduciary duties as alleged. As demonstrated below, this case is well-suited to be handled as a class action, and the Court should certify the proposed class.

## II. FACTUAL BACKGROUND

### A. Defendant Is the Named Fiduciary of UHH, an ERISA-Regulated Health Plan

UHH is a multiemployer employee welfare benefit plan within the meaning of sections 3(1) and 3(37) of ERISA, 29 U.S.C. § 1002(1), (37). Amended Answer, Dkt. #36, p. 1, ¶ 1. Defendant is the "named fiduciary" of UHH pursuant to section 402(a) of ERISA, 29 U.S.C. § 1102(a), and must discharge its fiduciary duties consistent with the requirements of ERISA. *Id.*

UHH provides benefits to participants through its different Plan Units. O'Donnell Decl., Ex. 59, Stipulations ("Stipulations"), p. 3, ¶ 7. Plan Units 178 and 278 provide benefits to participants in or near Los Angeles (178), and Orange County and Long Beach, California (278). *Id.* ¶¶ 8-9. Plan Unit 150 provides benefits to those in or near Las Vegas. *Id.* ¶ 10. Participants may receive benefits only from the Plan Unit covering their location and/or industry. *Id.* ¶ 11.

Plan Units 178 and 278 together have had at least 7,513 participants in the period from March 21, 2016 through the present. O'Donnell Decl. ¶ 51. As of Plan Year[1] 2023, only 645 participants remained in Plan Units 178 and 278. *Id.* ¶ 52. UHH maintains records of the names

[1] "Plan Year" refers to UHH's fiscal year, which runs from April 1 to March 31. Plan Years are identified by the year in which they end. E.g. Plan Year 2023 is the fiscal year ending March 31, 2023.

and last known addresses of participants. Stipulations ¶ 22, p. 5.

### B. Named Plaintiffs Are Current and Former Participants in Plan Units 178 and 278

Plaintiffs Acosta and Garcia are former participants in Plan Unit 178. Acosta Decl. ¶ 2. Garcia Decl. ¶ 2. Plaintiffs Sanchez and Shevlin are former participants in Plan Unit 278. Sanchez Decl. ¶ 2; Shevlin Decl. ¶ 2. Plaintiff Buenrostro is now a participant in Plan Unit 178. Buenrostro Decl. ¶2. Mr. Acosta and Ms. Sanchez were participants in Plan Units 178 and 278, respectively, when suit was filed. Cmplt., Dkt # 1, ¶¶13,15; Acosta Decl. ¶4; Sanchez Decl. ¶4.

### C. Plan Units 178 and 278 Are Funded by Employer and Employee Contributions

During the period covered by this lawsuit, employers in Plan Units 178 and 278, including the Named Plaintiffs' employers, contributed at least $3.95 per hour and up to $11.015 per hour to UHH to obtain health care benefits. Lopez Decl. ¶¶ 9, 16, 22, 29, 35, 37. Many participants in Plan Units 178 and 278 must also pay an out-of-pocket employee contribution to UHH to receive benefits. Ex. 83, 178 SPD, UHH037482; Ex. 86, 278 SPD, UHH039137. During this period, putative class members earned between $8 and $25.80 per hour in wages. Lopez Decl. ¶¶ 10, 17, 23, 30, 36. In fiscal years 2016-2023, UHH was predominantly funded by employer and employee contributions, comprising 97.8% of its income. O'Donnell Decl. ¶ 53; Stips., p. 3, ¶ 5.

Each participating employer must make "those [contributions] required by the Minimum Standards." Ex. 60, Trust Agreement § 9.01, UHH046734. Although participating unions and employers must agree on contribution rates to UHH in their collective bargaining agreements, they are not free to negotiate rates lower than what UHH requires. If they do, UHH can terminate the employer's participation, and thus the employees' health benefits. *Id.* §16.05 at UHH046768; Ex. 61, Minimum Standards §I.I at UHH046696; *see also* Ex. 91, Simon Depo. Tr. 21:19-24 (If union doesn't like UHH's rates "they're not required to stay in the fund."). In practice, therefore,

the union and employer must agree to rates set by UHH. *See* Simon Depo. Tr. 191:24-192:5 ("Q: Doesn't the fund set rates? A: Typically, we do."); Petersen Decl. ¶¶ 9, 14; Lynch Decl. ¶ 8.

UHH sets the rates so that the Plan Units will maintain their target financial surplus. Simon Depo. Tr. 46:12-14, 47:4-6, 180:1-14. "[W]hen setting rates" "the goal is to cover the cost of benefits and a pro-rata portion of administrative expenses, and to increase the Plan's reserves because the cost of coverage increases every month." Ex. 64, March 13, 2019 Board Meeting Minutes, UHH045571; *See also* Simon Depo. Tr. 56:23-57:2. UHH's written "Reserve Policy" requires setting "rates such that every Plan Unit is self-supporting." Ex. 88, 2002 Reserve Policy, UHH045927; Ex. 89, March 13, 2018 Board Meeting Minutes, UHH045537 (same); Ex. 90, 2020 Reserve Policy, UHH051966 (same); Stipulations ¶¶ 34-41. The surplus targets for Plan Units 178 and 278 have not changed since before March 21, 2016. Simon Depo. Tr. 47:15-24.

UHH sets contribution rates in Plan Units 178 and 278 without regard to the Plan Units' actual, allocated administrative expenses. Simon Depo. Tr. 49:10-50:1, 52:16-53:6, 175:9-13. Rather, it approximates administrative expenses as a percentage of the cost of benefits to those Plan Units. *Id.* Tr. 48:18-24. This approximation is "effectively" the same for all employers in Plan Units 178 and 278. *Id.* Tr. 58:8-10. Thus, by its own admission, UHH imposes contribution rates that bear no actual relationship to the cost of a Plan Unit's administrative expenses.

During the period from 2016 through the present, contributions to Plan Units 178 and 278 generated seven- and eight-digit surpluses for every plan year except 2020 and 2021, during the height of the COVID-19 pandemic. O'Donnell Decl. ¶ 54.

### D. UHH Gives the Las Vegas Plan a Two-Thirds Discount When Allocating Some Administrative Expenses to Plan Units

UHH allocates administrative expenses among the Plan Units pursuant to its written allocation policy. Stipulations, pp. 11-12, ¶¶ 26-30. This policy sets how expenses are "allocated

among plan units." Ex. 74, 1988 Allocation Policy, UHH063818. In general, UHH allocates expenses among Plan Units in proportion to the "total contributions handled in any given time period." *Id.* at UHH063820. However, expenses attributable to the "A" Departments—the legal, communications, accounting, and administration departments—are discounted to Plan Unit 150: the "contributions from the Las Vegas Fund Units is multiplied by 33.33%" before expenses are allocated. Ex. 75, 1994 Summary of Administrative Expense Allocation Policies, UHH045785; Ex. 74, UHH063820 ("units handled by ABPA[2] [have] a 1/3 weighting"); Ex. 77, UHH045834 ("This allocation uses 1/3 of the Las Vegas contributions."); Ex. 78, UHH045894 (same). In other words, the Las Vegas Plan Unit is allocated only one-third of its fair share of these expenses. The other Plan Units thus receive a proportionally greater share of expenses.

Two essential features of this policy are: (1) UHH allocates administrative expenses based on contributions received by each Plan Unit, and (2) specific categories of expenses (legal, communications, etc.) are allocated to Plan Unit 150 at one-third the rate of all other Plan Units.

The use of contribution dollars received as the sole basis for allocating administrative expenses also unfairly burdens Plan Units 178 and 278, even before taking into account the major discount given to the Las Vegas Plan Unit, because the amount of contributions bears no relationship to administrative expenses. During the years covered by this lawsuit, Plan Units 178 and 278 received average annual contributions of $16,202.33 per participant, while Plan Unit 150 received an average of only $9,254 per participant. O'Donnell Decl. ¶ 55. Thus, using contributions to allocate expenses already places a disproportionate burden on Plan Units 178 and 278 because they contribute at a higher rate than Plan Unit 150.

[2] The 1988 policy provides that "units handled by ABPA" receive the 2/3 discount. "ABPA" refers to the Las Vegas Plan Unit. *See* UHH045788; *See also* UHH045792 (explaining that "Non-ABPA Welfare Funds" refers to "all Funds except 150" [i.e. Las Vegas]).

Further, there are fewer administrative expenses properly associated with Plan Units 178 and 278 than with Plan Unit 150. Plan Units 178 and 278 are "heavily HMO units." Simon Depo. Tr. 49:2-9. Heavily HMO units like 178 and 278 have lower administrative expenses because "some functions like claims [handling] … are less involved in a unit that has an HMO." *Id.* Tr. 51:20-52:15. HMOs handle claims internally, reducing administrative expenses of claims handling for UHH. *See* Ex. 80, 178 Plan Document, UHH034702-03 (UHH claims appeal procedure does not apply to HMO plan); Ex. 81, 278 Plan Document, UHH034991 (same); Ex. 84, 178 SPD, UHH102012 (HMO has its own claims and appeals process); Ex. 87, 278 SPD, UHH102383 (same). Thus, the allocation policy burdens Plan Units 178 and 278 with an unfair share of UHH's administrative expenses.

In 2009, UHH's then-CEO reported to the Board of Trustees that the reasons for the Las Vegas discount are "lost in the mists of time." Ex. 62, Nov. 19, 2009 Board Meeting Minutes, UHH046017. Where justifications do exist, they are inconsistent. In 1988, UHH stated that the discount was justified because the "staff['s] efforts are less," with no supporting analysis. Ex. 74, UHH063820. But in 1994, UHH asserted the discount was justified because the Las Vegas plan "contribute[s] a disproportionate amount and should not be allocated such a high percentage of expenses." Ex. 75, UHH045785. Even if the Las Vegas Plan Unit accounted for a disproportionate share of contributions back in 1994, that is no longer the case. As noted in the preceding paragraphs, for the years at issue in this lawsuit, Plan Units 178 and 278 contributed much more per participant than the Las Vegas Plan Unit. Thus, if this justification were adequate in 1994, it had ceased being adequate by 2016.

### E. The Effect of the Allocation Policy: Plan Units 178 and 278 Bear a Disproportionate Share of UHH's Administrative Expenses Compared to Plan Unit 150

UHH's financial "dashboards" show the actual allocation of administrative expenses

among the Plan Units pursuant to the allocation policy. Simon Depo. Tr. 124:16-17, 174:12-13 ("to be clear, [the dashboards] are reports of what happened"); Stipulations ¶¶ 24-25. From fiscal years 2016 through 2023, UHH always allocated expenses disproportionately to Plan Units 178 and 278 compared to the Las Vegas Plan Unit. UHH allocated to Plan Units 178 and 278 at least $1,014.82 in expenses per participant (in 2016) and as much as $2,152.80 per participant (in 2023). O'Donnell Decl. ¶ 56. Yet during these same years UHH allocated to the Las Vegas Plan Unit no more than $805.84 per participant (in 2023) and as little as $529.36 per participant (in 2017). *Id.* In each fiscal year from 2016 through the present, expenses allocated to Plan Units 178 and 278 were at least 1.8 times those of Plan Unit 150, and sometimes twice as high. *Id.* ¶ 57. From April 2016 to 2023, Plan Units 178 and 278 were allocated $19,446,307.83 more in administrative expenses than if the Plan Unit 150 rate per participant had been used. *Id.* ¶ 58.

### F. For All Relevant Years for Which Data Exists, UHH's Administrative Expenses Significantly Exceed Those of Comparable Multiemployer Plans

From April 2016 through 2023, UHH's total administrative expenses exceed those of the average, comparable partially self-insured multiemployer health plan by $235,845,102.96, and exceed the expenses of the median such plan by $214,602,020.42. O'Donnell Decl. ¶¶ 74-75.

### G. Administrative Expenses Are Ultimately Passed on to Participants

In order to negotiate contribution rates that would satisfy UHH's minimum contribution rates, Local 11 often had to sacrifice other economic objectives such as higher wages and retirement contributions. Petersen Decl. ¶ 20; Lynch Decl. ¶ 9. Thus, if excessive administrative expenses require higher contributions from employers, these costs are ultimately born by the covered employees. Indeed, as one UHH trustee acknowledged, "Putting too much into the Fund's reserves has implications on wages for the participant." Ex. 63, March 3, 2015 Executive Committee Meeting Minutes, UHH063336. Further, as noted in Section II.C above, many

participants in Plan Units 178 and 278 contribute directly from their wages as well.

## III. STANDARDS FOR DECIDING THIS MOTION

In deciding a motion for class certification, the district court must focus on the Rule 23 requirements, not the merits: "the court may *only* consider the merits of a claim to the extent 'they are relevant to determining whether the Rule 23 prerequisites for class certification are satisfied.'" *Eddlemon v. Bradley Univ.*, 65 F.4th 335, 341 (7th Cir. 2023) (emphasis added) *quoting Amgen Inc. v. Conn. Ret. Plans & Tr. Funds*, 568 U.S. 455, 466 (2013). The court must avoid "weighing that evidence to determine whether the plaintiff class will ultimately prevail on the merits.'" *Id. quoting Ross v. Gossett*, 33 F.4th 433, 442 (7th Cir. 2022). "Doubts about whether to grant certification generally are resolved in favor of certification." *Day v. Check Brokerage Corp.*, 240 F.R.D. 414, 417 (N.D. Ill. 2007); *Vigus v. S. Illinois Riverboat/Casino Cruises, Inc.*, 274 F.R.D. 229, 234 (S.D. Ill. 2011). The Court must certify a proposed class when the class meets all the prerequisites of Rule 23(a) and at least one of the requirements of Rule 23(b). *Messner v. Northshore Univ. HealthSystem*, 669 F.3d 802, 811 (7th Cir. 2012). Applying these standards, this case is well-suited for resolution on a class-wide basis.

## IV. ARGUMENT

### A. The Proposed Class Meets Each Requirement of Rule 23

All four Rule 23(a) prerequisites and the requirements for class certification under Rule 23(b)(1) and (b)(3) are satisfied in this case. When a class is eligible under both Rule 23(b)(1) and (b)(3), the class should be certified under (b)(1). Wright & Miller, 7AA Fed. Prac. & Proc. Civ. § 1772 (3d ed. 2023); *Piazza v. Ebsco Indus., Inc.,* 273 F.3d 1341, 1352 (11th Cir. 2001).

#### 1. Numerosity: The Class Is at Least 7,513 Members

"A class can be certified without determination of its size, so long as it's reasonable to believe it large enough to make joinder impracticable and thus justify a class action suit." *Orr v.*

*Shicker*, 953 F.3d 490, 497–98 (7th Cir. 2020) (internal citations omitted). Here, the class of at least 7,513 individuals undoubtedly satisfies the numerosity requirement. O'Donnell Decl. ¶ 51.

### 2. Commonality: The Question of Defendant's Breaches of ERISA's Fiduciary Duties Are Common to All Class Members

Commonality requires that class members have claims that depend upon a "common contention …of such a nature that it is capable of classwide resolution." *Wal-Mart Stores, Inc. v. Dukes*, 564 U.S. 338, 349-50 (2011). A single common question of law or fact is enough, if "determination of its truth or falsity will resolve an issue that is central to the validity of each one of the claims in one stroke." *Orr v. Shicker*, 953 F.3d 490, 498 (7th Cir. 2020); *Bell v. PNC Bank, National Ass'n*, 800 F.3d 360, 381 (7th Cir. 2015) ("commonality as to every issue is not required"). Commonality generally exists where, as here, "the defendants have engaged in standardized conduct towards members of the proposed class." *Keele v. Wexler*, 149 F.3d 589, 594 (7th Cir. 1998).

In ERISA class actions founded on claims for breach of fiduciary duty, "commonality is quite likely to be satisfied." *In re Schering Plough,* 589 F.3d at 599, n.1; *Brieger v. Tellabs, Inc.,* 245 F.R.D. 345, 349 (N.D. Ill. 2007) (breach of fiduciary duty claim satisfied commonality since "plaintiffs' claims derive[d] from defendants' actions (or inactions) with respect to the Plan"). This is because the focus of such claims is on defendant's conduct: courts "compare whatever steps [defendant] actually took with the procedures that a prudent fiduciary would use." *Allen v. GreatBanc Tr. Co.*, 835 F.3d 670, 679 (7th Cir. 2016); *Keach v. U.S. Tr. Co.*, 240 F.Supp.2d 840, 845 (C.D. Ill. 2002) ("ERISA's prudent person standard is objective, focusing on the conduct of the particular fiduciary"); *See also Hughes v. Nw. Univ.*, 595 U.S. 170, 176 (2022) (focus is fiduciary conduct: "participants' ultimate choice over their investments [does not] excuse allegedly imprudent decisions by respondents"). This lawsuit challenges Defendant's

policies for incurring and allocating administrative expenses—precisely the type of conduct subject to common proof. Indeed, there are several questions of law and fact common to the Class including, but not limited to:

a. Whether Defendant breached its fiduciary duties by adopting and applying a policy granting a two-thirds discount to the Las Vegas Plan Unit for some administrative expense categories, resulting in a higher share of expenses being allocated to the other Plan Units;

b. Whether Defendant breached its fiduciary duties by adopting and applying a policy that allocates administrative expenses among Plan Units based on the amount of each Plan Unit's incoming contributions rather than a more precise measure of the administrative expenses actually incurred by each Plan Unit;

c. Whether the foregoing policies in fact resulted in an unfair allocation of administrative expenses to Plan Units 178 and 278; and

d. Whether UHH's overall administrative expenses were unreasonably high and, if so, whether Defendant breached its fiduciary duty in allowing such unreasonably high expenses.

**3. Typicality: The Representatives' Claims Are Typical**

A plaintiff's claim is typical "if it arises from the same event or practice or course of conduct that gives rise to the claims of other class members and ... [is] based on the same legal theory." *Howard v. Cook Cnty. Sheriff's Off.*, 989 F.3d 587, 605 (7th Cir. 2021). "Typical does not mean identical, and the typicality requirement is liberally construed." *Dennis v. Greatland Home Health Servs., Inc.,* 591 F.Supp.3d 320, 328 (N.D. Ill. 2022). "Typicality … should be determined with reference to the [defendant's] actions." *Wagner v. NutraSweet Co.*, 95 F.3d 527, 534 (7th Cir. 1996). Courts have regularly found that individuals bringing class claims for breach of fiduciary duty under ERISA satisfy the typicality requirement. *See, e.g. Brieger,* 245 F.R.D. at 350; *Boley v. Universal Health Servs., Inc.,* 337 F.R.D. 626, 632-636, fns. 39, 67 (E.D. Pa.

2021), *aff'd*, 36 F.4th 124 (3d Cir. 2022) (collecting cases).

The Named Plaintiffs' claims are typical of the class. Defendant's allocation policy does not distinguish between participants within Plan Units 178 and 278 in any way. Expenses are allocated at the level of the Plan Units as a whole. If the allocation scheme is unlawful, it follows that it had a common effect on all participants in the Plan Units. This is plainly true for out-of-pocket employee contributions, for plan assets lost due to excessive administrative expenses, and for the loss of higher quality benefits that could otherwise have been obtained. But it is equally true of the loss of wages and compensation suffered by each putative class member, particularly since the administrative expenses are passed on to all employers in Plan Units 178 and 278 using a fixed factor. Simon Depo. Tr. 48:18-24; Petersen Decl. ¶ 20; Lynch Decl. ¶ 9.

Additionally, if Defendant is liable, the Named Plaintiffs and the class members are all entitled to the same remedies under ERISA. Since each class member's claims arise from the same course of events and involve similar legal arguments to establish Defendant's liability, Plaintiffs clearly satisfy the typicality requirement.

Typicality is also satisfied because injunctive and declaratory relief is a significant component of the case. *See Nicholson v. Williams*, 205 F.R.D. 92, 99 (E.D.N.Y. 2001); FAC, Prayer for Relief ¶¶ 5-7 at pp. 53-54.

**4. Adequacy: The Class Representatives and Class Counsel Are Adequate**

A class representative is adequate if they are part of the class and "possess the same interest and suffer the same injury" as the other class members. *Orr*, 953 F.3d at 499. "Factors in this analysis are whether the named plaintiffs have (1) claims that do not conflict with those of other class members; (2) sufficient interest in the outcome of the case to ensure vigorous advocacy; and (3) competent, qualified, and experienced counsel who are able to conduct the litigation vigorously." *Vandehey v. Client Servs., Inc.*, 390 F.Supp.3d 956, 961 (E.D. Wis. 2019).

"[A]ny doubts about adequate representation or potential conflicts … tend to [be] resolve[d] in favor of certifying the class[.]" 1 Newberg and Rubenstein on Class Actions § 3:55 (6th ed.).

Named Plaintiffs are adequate representatives as each is a member of the putative class, and as described in the previous section, suffered the same injury as those of the class. There are no conflicts of interest between Named Plaintiffs and putative class members. Named Plaintiffs and each class members have a strong interest in establishing Defendant's liability and determining whether Defendant violated ERISA by breaching its fiduciary duties of loyalty and prudence by incurring excessive administrative expenses and/or unfairly allocating administrative expenses between Plan Units. All class members also share interests in establishing Defendants' liability in restitution for the wrongful disposition of their wages, employee contributions, and other economic benefits, obtaining an order to transfer plan assets attributable to contributions made on their behalf of to a health plan that currently provides their benefits, and deterring such conduct in the future through injunctive and declaratory relief.

Plaintiffs have also retained highly capable counsel with extensive experience in prosecuting class litigation and/or ERISA litigation. Weiner Decl. ¶¶ 3-11; Yokich Decl. ¶¶ 1-10. All Plaintiffs' counsel meet the requirements of Rule 23(g). Plaintiffs' counsel have shown they are capable of, and have committed substantial resources to, representing the class and are fully committed to vigorously prosecuting this action on the class's behalf. *Id*.

### B. Certification Is Warranted Under Rule 23(b)(1)

Once the requirements of Rule 23(a) are satisfied, Rule 23(b)(1) permits class certification if prosecuting separate actions by or against individual class members would create a risk of: "(A) inconsistent or varying adjudications … that would establish incompatible standards of conduct for the [defendant]; or (B) adjudications with respect to individual class members that, as a practical matter, would be dispositive of the interests of the other members

…” Fed. R. Civ. P. 23(b)(1). “ERISA class actions are commonly certified under either or both subsections of 23(b)(1).” *Neil*, 275 F.R.D. at 267; *See also In re Schering Plough,* 589 F.3d at 604 (ERISA fiduciary breach cases are “paradigmatic examples of claims appropriate for certification as a Rule 23(b)(1) class”) (collecting cases).

Rule 23(b)(1)(A) applies when the defendant is “obliged by law to treat the members of the class alike ... or where the [defendant] must treat all alike as a matter of practical necessity.” *Amchem Prod., Inc. v. Windsor*, 521 U.S. 591, 614 (1997). “Subdivision (b)(1)(A) … speaks directly to ERISA suits, because the defendants have a statutory obligation, as well as a fiduciary responsibility, to “treat the members of the class alike.” *In re Citigroup Pension Plan ERISA Litig.*, 241 F.R.D. 172, 179 (S.D.N.Y. 2006). As such, the putative class is properly certified under Rule 23(b)(1)(A).

The class is also appropriate under 23(b)(1)(B) because “a victory on these claims by one plan member would necessarily be a victory for all plan members.” *Zell*, 275 F.R.D. at 268.

### C. Certification Is Also Warranted Under Rule 23(b)(3)

Rule 23(b)(3) requires class certification if “the court finds that the questions of law or fact common to class members predominate over any questions affecting only individual members, and that a class action is superior to other available methods for fairly and efficiently adjudicating the controversy.” Both of these requirements are satisfied here.

#### 1. Common Issues Predominate

“[A] common question predominates over individual claims if ‘a failure of proof on the [common question] would end the case’ and the whole class ‘will prevail or fail in unison.’” *Bell v. PNC Bank, Nat. Ass’n*, 800 F.3d 360, 378 (7th Cir. 2015). “[A] common question is one where the same evidence will suffice for each member to make a prima facie showing or the issue is susceptible to generalized, class-wide proof.” *Tyson Foods, Inc. v. Bouaphakeo,* 577 U.S. 442,

453 (2016) (internal citations and quotations removed).

Here, the common question of whether Defendant has breached its fiduciary duties predominates over all individual claims. The elements of an ERISA breach of fiduciary duty claim are: "(1) that the defendant is a plan fiduciary; (2) that the defendant breached its fiduciary duty; and (3) that the breach resulted in harm to the plaintiff." *GreatBanc*, 835 F.3d at 678. Defendant does not dispute that it was the named fiduciary of the Plan. Amended Answer, Dkt #36 ¶ 1. This is common to all class members. Whether Defendant breached its fiduciary duties, either by incurring excessive administrative expenses, or by unfairly allocating expenses among the Plan Units, or both, depends on common proof. As noted above in Section IV.A.2, these issues are resolved by comparing Defendant's conduct to that of a reasonably prudent trustee. *GreatBanc* at 679. Whether Defendant's conduct meets this standard will be common to all Class members.

The third element of a claim for breach of fiduciary duty also rests on common proof. Here, any excessive administrative expenses paid out of the Plan reduced Plan assets that could have been spent for the improvement of the class's health benefits. Further, Plan Units 178 and 278 were required to be self-sustaining. 2002 Reserve Policy, UHH045927; March 13, 2018 Board Meeting Minutes, UHH045537 (same); 2020 Reserve Policy, UHH051966 (same); Stipulations ¶¶ 34-41. Thus, an unfair allocation of expenses to these Plan Units also reduced the funds available for the improvement of the class's health benefits. And, because the administrative expense allocation was factored into contribution rates, class members that made employee contributions to UHH also have a harm that is amenable to common proof. March 13, 2019 Board Meeting Minutes, UHH045571; *See also* Simon Depo. Tr. 56:23-57:2.

**2. A Class Action Is Superior to Individual Adjudication**

A class action is also the superior method of litigating these claims. Class certification is

"superior" when the "class action would achieve economies of time, effort, and expense, and promote … uniformity of decision as to persons similarly situated, without sacrificing procedural fairness or bringing about other undesirable results." *Amchem*, 521 U.S. at 615 (internal citations omitted). Because this action rests primarily upon Defendant's conduct in incurring and allocating administrative expenses, individual class members will have little or no interest in individually controlling the prosecution of this action. *See* Fed. R. Civ. P. 23(b)(3)(A). There does not appear to be any other lawsuit against UHH alleging the same violation of ERISA. O'Donnel Decl. ¶ 76; Fed. R. Civ. P. 23(b)(3)(B). The forum selection clause of UHH's Trust Agreement requires litigation in this Court (Resolution 9, UHH046766), so it is reasonable to concentrate the litigation here. *See* Fed. R. Civ. P. 23(b)(3)(C). In addition, Plaintiffs' claims will completely or largely resolve the claims of other class members rendering duplicative actions wasteful and inefficient. *See* Fed. R. Civ. P. 23(b)(3)(D).

## V. CONCLUSION

For the foregoing reasons, the proposed class should be certified.

Respectfully submitted this 16th day of April, 2024.

/s/ Benjamin M. O'Donnell
Michael D. Weiner, pro hac vice
Benjamin M. O'Donnell, pro hac vice
Nicole Grinstein, pro hac vice
GILBERT & SACKMAN
A LAW CORPORATION
800 Wilshire Blvd.
Suite 1410
Los Angeles, CA 90017
(323) 938-3000
mweiner@gslaw.org
bodonnell@gslaw.org
ngrinstein@gslaw.org

*Attorneys for Plaintiffs*

Robert E. Bloch
Stephen A. Yokich
George A. Luscombe III
Elizabeth L. Rowe
DOWD, BLOCH, BENNETT, CERVONE, AUERBACH & YOKICH LLP
8 South Michigan Ave. – 19th Floor
Chicago, IL 60603
(312) 372-1361
rebloch@laboradvocates.com
syokich@laboradvocates.com
gluscombe@laboradvocates.com
erowe@laboradvocates.com

*Attorneys for Plaintiffs*