**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION**

| | |
|---|---|
| **MFB FERTILITY, INC.,** | |
| **Plaintiff,** | **No.  23 cv 3854** |
| **v.** | **Judge Harry D. Leinenweber** |
| **ACTION CARE MOBILE VETERINARY CLINIC, LLC,** | |
| **Defendant.** | |

## MEMORANDUM OPINION AND ORDER

On June 6, 2023, Plaintiff (and counter-defendant) MFB Fertility, Inc., filed a two-count complaint against Defendant (and counter-plaintiff) Action Care Mobile Veterinary Clinic, LLC, for copyright and trademark infringement. Defendant moved to dismiss Plaintiff's copyright claim for failure to state a claim under Rule 12(b)(6) and levied five counterclaims against Plaintiff for misrepresentation under 17 U.S.C. § 512(f), tortious interference, defamation *per se* and *per quod*, and cancellation of Plaintiff's "PROOV" trademark. Plaintiff moved to dismiss Defendant's counterclaims.

The Court now decides Defendant's and Plaintiff's Motions to Dismiss. For the reasons stated herein, the Court fully GRANTS Defendant's Motion to Dismiss and GRANTS Plaintiff's in part.

- 1 -

## I.     **BACKGROUND**

Plaintiff MFB Fertility, Inc ("MFB") is a Colorado-based corporation founded by nationally recognized fertility expert Dr. Amy Beckley ("Dr. Beckley"). Dr. Beckley invented PROOV to measure the presence of progesterone (PdG) metabolites in urine and to allow women to confirm successful ovulation by tracking their PdG levels. Through Amazon marketplace and its website www.proovtest.com, MFB "promotes, offers for sale, and sells products . . . under the trademark PROOV®." (Dkt. No. 22 ¶ 27; Amended Complaint ("Compl."), *see also* (U.S. Registration Number: 5,622,245; International Registration Number: 1,444,237). MFB's PROOV branded products include advertisements and instructions, such as FDA-required labels and their website's Frequently Asked Questions page, so that PROOV can be readily used by unskilled persons at home. MFB registered their copyrights in these materials on November 9, 2023 ("Copyrighted Works"). (Compl. ¶ 50).

Competitor and Defendant Action Care Mobile Veterinary Clinic, LLC, ("Action Care"), a Maryland limited liability company and online retailer, similarly specializes in the sale of PdG ovulation test strips. Action Care's PdG test is called OvuProof, and it is sold under the trade name Action Care Wellness ("Action Care"). In addition to using Amazon's marketplace, Defendant Action Care operates the website www.buyovuproof.com, where it promotes, advertises, offers for sale, and sells its PdG products under the name "OVUPROOF." (Compl. ¶ 41).

On or around June 2, 2023, Plaintiff MFB, through one of MFB's authorized representatives, submitted a takedown notice to Amazon under the Digital Millennium

Copyright Act ("DMCA" and such takedown notice, "DMCA Takedown Notice"). This resulted in the automatic, immediate takedown and removal of the Action Care Amazon Product Listing Page. (Dkt. No. 15 ¶ 12, Defendant's Answer and Counterclaims ("Countercl.")). Deactivation of the Action Care Amazon Product Listing Page further resulted in at least 174 units of Action Care's products being stranded or lost. (Countercl. ¶ 18).

In addition to including language mandated by the DMCA and by Amazon for submission of takedown notices under the DMCA, MFB's DMCA Takedown Notice included the following statements:

> They [Action Care] found a cheap Chinese manufacturer to copy our tests then used *all* of our wording on the product page and product inserts. Copyrighted content: They copied *all* of our FAQs and product description from this product page [] They also took wording from our FAQ on our website: https://proovtest.com/products/proov-test-strips including the 'who might have a problem with ovulation, comment FAQ, when to test, and what is successful ovulation.
> (*Id.* ¶ 13) (emphasis added).

On or around June 2, 2023, Action Care submitted a counternotice to Amazon under the DMCA, momentarily reinstating its OvuProof product listing. But on June 17, 2023, purportedly seeking to further protect their intellectual properties, MFB filed the instant copyright and trademark infringement claims against Action Care. In Plaintiff's complaint, now amended after Defendant filed its Motion to Dismiss (Dkt. No 11, Def's Mot. to Dismiss), MFB alleges that Action Care "traded off the goodwill" of MFB's PROOV trademark in an effort "to maximize its profits" and "minimize its overhead expenses" in Action Care's sale of OvuProof. (Compl. ¶ 52). These violations include "text associated with FAQ's and product descriptions from MFB's Amazon website and the MFB corporate

website," and "text and information as to who might have a problem with ovulation, when to test, what constitutes information as its own on its Amazon listing website page." (Dkt. No. 6¶ 12, Complaint ("Orig. Compl.")). MFB sent its complaint to Amazon, who again removed Action Care's OvuProof product listing. Action Care's purported infringement is pictured in the following table:

| Plaintiff MFB's PROOV Copyrighted Works | Defendant Action Care's OvuProof Materials |
|---|---|
| 1. Proov PdG - Progesterone Metabolite – Test \| Only FDA-Cleared Test to Confirm Successful Ovulation at Home \| 4 Cycle Pack \| Works Great with Ovulation Tests \| 18 PdG Test Strips | 1. OvuProof PdG Tests/Progesterone Metabolite/FDA Registered Rapid Test to Confirm Successful Ovulation/Monitor Pregnancy/ 5 Tests/1Cycle/ Works Well per Box Brand: OvuProof |
| 2. [detailed product description text] | 2. [detailed product description text] |
| 3. Proov PdG - Progesterone Metabolite – Test \| Only FDA-Cleared Test to Confirm Successful Ovulation at Home \| 4 Cycle Pack \| Works Great with Ovulation Tests \| 18 PdG Test Strips | 3. OvuProof PdG Tests/Progesterone Metabolite/FDA Registered Rapid Test to Confirm Successful Ovulation/Monitor Pregnancy/ 5 Tests/1Cycle/ Works Well with Ovulation/LH Tests/ 5 PdG Test Strips per Box Brand: OvuProof |
| 4. Proov PdG - Progesterone Metabolite – Test \| Only FDA-Cleared Test to Confirm Successful Ovulation at Home \| 4 Cycle Pack \| Works Great with Ovulation Tests \| 18 PdG Test Strips | 4. OvuProof PdG Tests/Progesterone Metabolite/FDA Registered Rapid Test to Confirm Successful Ovulation/Monitor Pregnancy/ 5 Tests/1Cycle/ Works Well with Ovulation/LH Tests/ 5 PdG Test Strips per Box Brand: OvuProof |

In response to MFB's Complaint, Action Care moved to dismiss Plaintiff's copyright claim under 12(b)(6) for failure to state a claim and levied five counterclaims against MFB for misrepresentation under 17 U.S.C. § 512(f), tortious interference, defamation *per se* and *per quod*, as well as cancellation of Plaintiff's "PROOV" trademark. (Def's Mot. to

Dismiss ¶¶ 24-63). Reciprocating, MFB moved to dismiss Action Care's counterclaims under 12(b)(6). (Dkt. No. 31, Pl's Mot. to Dismiss).

A review the parties' complaints and the relevant case law compels the Court to GRANT both motions, Action Care's fully and MFB's in part. Specifically, the following order concludes first that MFB's Copyrighted Works are scientific and factual. Scientific and factual works are entitled to the narrowest copyright protections, and Plaintiff fails to plead a cognizable basis of infringement for its Copyrighted Works. The order then turns to MFB's Motion to Dismiss Action Care's counterclaims, concluding that Action Care alleges facts sufficient to state a claim to relief that is plausible on its face for each of its claims except for trademark cancellation.

## II.   <u>LEGAL STANDARD</u>

"'To survive a motion to dismiss under Rule 12(b)(6), the complaint must provide enough factual information to state a claim to relief that is plausible on its face and raise a right to relief above the speculative level.'" *Elaihor v. Primerica Life Ins. Co.*, 2023 WL 3947617, *2 (date N.D. Ill. 2023) (quoting *Haywood v. Massage Envy Franchising, LLC*, 887 F.3d 329, 333 (7th Cir. 2018). "'While detailed factual allegations are not necessary to survive a motion to dismiss, [the standard] does require 'more than mere labels and conclusions or a formulaic recitation of the elements of a cause of action to be considered adequate.'" *Id.*, at *2. (quoting *Sevugan v. Direct Energy Servs., LLC*, 931 F.3d 610, 614 (7th Cir. 2019). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). Dismissal is appropriate

only if "'it is clear that no relief could be granted under any set of facts that could be proved consistent with the allegations.'" *Ledford v. Sullivan*, 105 F.3d 354, 356 (7th Cir. 1997) (quoting *Hishon v. King & Spalding*, 467 U.S. 69, 73 (1984)).

### III.  DEFENDANT'S MOTION TO DISMISS

### A.  Copyright Infringement

To state a claim for copyright infringement, a plaintiff must allege (1) ownership of a valid copyright, and (2) copying of constituent elements of the work that are original. *Feist Publ'n, Inc. v. Rural Tel. Serv. Co.*, 499 U.S. 340, 361 (1991). Where, as here, direct evidence such as an admission of copying is not available, the plaintiff must allege facts that reasonably show that (1) the defendant had "access" — that is, a reasonable opportunity to copy the work, and that (2) the works at issue are substantially similar in their protectable expression. *Peters v. West*, 692 F.3d 629, 633 (7th Cir. 2012).

Though instructions, promotional materials, and warnings associated with products like Plaintiff's PROOV and Defendant's OvuProof are entitled to copyright protection, it is "axiomatic" that copyright law denies protection to "fragmentary words and phrases" and to "forms of expression *dictated solely at functional considerations*" on the grounds that these materials do not exhibit the minimal level of creativity necessary to warrant copyright protection. *ABRO Indus., Inc. v. 1 NEW Trade, Inc.*, 2017 WL 4954698, at *7 (N.D. Ind. Oct. 30, 2017) (emphasis added). In contexts where opportunities for originality are indeed limited by functional requirements, "the substantial similarity requirement is particularly hard to satisfy," requiring a threshold showing of "striking" similarity or verbatim copying. *Design Basics LLC, v. Lexington Homes, Inc.*,

858 F.3d 1093, 1101 (7th Cir. 2017) ("A similarity may be striking without being suspicious"). Absent verbatim copying or "striking" similarity, no infringement exists both because language describing what a product does and how it is used is generally noncopyrightable; and even where it is copyrightable, infringement can be demonstrated only by precise copying. *Sassafras Enterprises, Inc. v. Roshco, Inc.*, 889 F. Supp. 343, 345 (N.D. Ill. 1995) (conceding that defendant Roshco expressed many of the same ideas as competitor and Plaintiff Sassafras but granting summary judgment because the copying was not verbatim).

Action Care does not dispute at this stage that MFB owns a valid copyright in their PROOV Copyrighted Works nor that it had access. Instead, Action Care purports that its OvuProof digital properties are not "substantially similar (let alone strikingly similar) to the PROOV Content as a matter of law." (Def's Mot. to Dismiss at 5). MFB encourages the Court to deny Defendant Action Care's Motion to Dismiss because the cases which Action Care relies on are "inapposite." (Dkt. No. 23; MFB's Response to Defendant's Partial Motion to Dismiss at 11 ("MFB Resp. to Mot. To Dismiss")).

The Court agrees that cases Defendants cited are not direct fits for this case, but they remain instructive and suggest dismissal at this stage would be appropriate. In *Meynart-Hanzel v. Turner Broadcasting System*, for instance, plaintiffs alleged that the defendant conspired to steal their copyrighted property by producing and distributing an episodic television program "very similar" to the plaintiff's. 2018 WL 4467147 (N.D. Ill. Sept. 18, 2018). The *Meynart-Hanzel* court granted the defendant's motion to dismiss despite similarities between the two works, including the "conflict-of-loyalty" theme, use

of the phrase "If These Walls Could Talk" in each respective title, and characters with shared characteristics, such as being an atheist or a single mother whose children have loyalty issues. *Id.*, at *8. The court held that the *Meynart-Hanzel* plaintiffs failed to plead substantial similarities between the disputed materials, reasoning in part that:

> Copyright protects those elements of a work that possess originality, with originality requiring that the elements be independently created and possess at least some minimal degree of creativity. Moreover, it is only the form of an author's expression that is protectable, not the facts or ideas being expressed. When an idea is capable of very few expressions, the idea and its expression merge and the expression may not be copyrighted."

> *Id.* (internal quotation marks omitted).

MFB correctly observes that *Meynart-Hanzel* is distinguishable because that case turned on creative plot devices, whereas this case concerns predominately scientific descriptions associated with fertility products. However, *Meynart-Hanzel*'s distinction between facts and ideas encapsulates the "delicate equilibrium" copyright law seeks to strike between affording protection to authors as an incentive to create and appropriately limiting the extent of that protection to avoid the effects of monopolistic stagnation. *Sassafras Enterprises*, 889 F. Supp. at 346 (quoting *Computer Assocs. Int'l, Inc. v. Altai, Inc.*, 982 F.2d 693, 696 (2d Cir. 1992)). In maintenance of this delicate equilibrium, "the Copyright Act does not protect general ideas, but only the particular *expression* of an idea." *Hobbs v. John*, 722 F.3d 1089, 1094 (7th Cir. 2013) (emphasis added). The *Meynart-Hanzel* court maintained that equilibrium by dismissing the plaintiff's complaint, as the infringement claim concerned "commonplace themes [] too general to be protected," and thus were insufficiently creative. 2018 WL 4467147, at *8.

This equilibrium was again maintained in *ABRO Industries, Inc. v. 1 NEW Trade, Inc.*, a case that is directly applicable to the alleged infringement here. The *ABRO* plaintiff – an automative parts and supplies manufacturer – alleged that the defendant infringed on its copyright for materials related to its competing carburetor and choke cleaner. 2017 WL 4954698, at *1 (N.D. Ind. Oct. 30, 2017). The *ABRO* plaintiff took issue with the defendant's carburetor image included on its packaging, its "nearly identical" shape and name (both products were called the "Carb & Choke Cleaner"), as well as the instructions and warnings sold alongside defendant's products. 2017 WL 4954698, at *4, *7. This included the defendant's instructions to: "Remove air filter and spray exterior and interior of carburetor. While engine is idling spray short bursts inside carburetor intake. Also (*sic*) can be used as general-purpose degreaser when working with varnished parts of engine." *Id.*, at *10. These instructions allegedly infringed on the plaintiff's instructions, which read: "Remove the air filter and spray exterior carburetor linkage. To remove gum and varnish from the throttle plate, spray short bursts into the carburetor bowl while the engine is idling." *Id.*

Although the court found that the plaintiff had a valid copyright on the instructions and warning label, there was insufficient similarity because the plaintiff had "no monopoly on the method of cleaning a carburetor." *Id.*, at *10. This was "especially" true when "the words and phrases are necessary to describe an unprotected process." *Id.*, citing *Rozenblat v. Sandia Corp.*, 79 Fed. App'x. 904, 906-07 (7th Cir. 2003). Any copying failed to constitute infringement because "[o]nly a small portion of the Defendants' text is verbatim, and that portion of the text is necessary to communicate the required warnings

and describe to the consumer how to use the product, a process on which ABRO does not hold a monopoly." *Id.*, at *11.

A review of MFB's complaint reveals that there is also no verbatim copying here. In addition to the photos MFB provided in its Amended Complaint pictured in Section I, MFB claims Action Care infringed on its intellectual properties because:

- "The term 'Cycle' is identical to the term 'Cycle.'"
- "The phrase 'Works Great with Tests' is substantially similar to the phrase 'Works Well with Ovulation/LH Tests.'"
- "The term 'PdG Test Strips' is identical to the term '"PdG Test Strips.'"
- "The term 'CONFIRM OVULATION' is identical to the term 'CONFIRM OVULATION,' and both are used in the first paragraphs of their respective works as a way to distinguish from predicting ovulation."
- "The phrases 'THE ONLY FDA-CLEARED PdG Test' is substantially similar to the phrase 'OvuProof is FDA registered,' and each work includes that point in the third paragraph of their respective works."

(Compl. ¶¶ 57-60, 62)

As in *ABRO*, "[t]here is nothing unique about placing the name of the company and the name of a product at the top of a product's packaging with a descriptive image below that text and with instructions and legally mandated warnings wrapped around the remainder of a product's packaging." 2017 WL 4954698, at *7. In fact, under MFB's construction, Action Care would ostensibly be required to violate the FDA's labeling requirements for in vitro diagnostic products to bypass MFB's copyright. 21 C.F.R. § 809.10. Those requirements mandate in vitro product labels to include the product's name and intended use(s), a statement of warnings or precautions, as well as "[i]nstructions for a simple method by which the user can reasonably determine that the product meets its appropriate standards." *Id.* For reagents (i.e., a substance or mixture for use in chemical analysis) like MFB's PROOV and Defendant's OvuProof, the label must also

- 10 -

include "a declaration of the established name (common or usual name), if any, and quantity, proportion or concentration of each reactive ingredient." 21 C.F.R. § 809.10(a)(3). In *Feist Publications*, the Supreme Court noted that the originality requirement for copyright protection may not be met when disclosures are made to adhere to legislation. 499 U.S. at 363 ("one could plausibly conclude that this selection was dictated by state law, not by" the plaintiff's original creativity). This functional, regulated language is precisely the "expression" that MFB improperly claims intellectual property over.

To the extent that Action Care has directly copied from MFB, its copying is limited to fragments that are descriptive of its product and is compelled by the legislature. MFB cannot claim ownership of medical terms such as "cycle" or "PdG Test Strips" no more than Pfizer or Moderna can claim ownership over "COVID-19 vaccine" when selling its vaccinations. As MFB does not otherwise allege any facts indicating that Action Care copied its Copyrighted Works verbatim or near-verbatim, MFB has failed to state a claim for copyright infringement. The claim is DISMISSED.

## IV.  PLAINTIFF'S MOTION TO DISMISS

### A.  Misrepresentation

The legal standard for a motion to dismiss a counterclaim is the same as for a motion to dismiss a complaint. *Cozzi Iron & Metal Inc. v. U.S. Office Equip., Inc.*, 250 F.3d 570, 574 (7th Cir.2001). Count One of Action Care's counterclaims alleges that MFB violated 17 U.S.C. § 512(f) by knowingly and materially misrepresenting that the content contained on the Action Care Amazon Product Listing Page infringed upon MFB's

Copyrighted Works in its June 2, 2023, DMCA notice to Amazon marketplace. A copyright owner who submits a takedown notice to a service provider must include a statement, under penalty of perjury, that it has "a good faith belief that use of the material in the manner complained of is not authorized by the copyright owner." 17 § 512(c)(3)(A)(v)–(vi); *Hughes v. Benjamin*, 437 F. Supp. 3d 382 (S.D.N.Y. 2020).

As Action Care notes, Section 512(f)'s case law is sparse on the district court level in the Seventh Circuit. *Sunny Factory, LLC v. Chen*, 2022 WL 742429, at *4 ("There is limited case law in the Seventh Circuit interpreting a cause of action based on 17 U.S.C. § 512(f)."). In fact, almost no circuit-level cases exist regarding Section 512(f)'s knowledge requirement, with the Ninth Circuit again being the only one to have ruled on it. *See, generally, Lenz v. Universal Music Corp.*, 815 F.3d 1145 (9th Cir. 2015), *cert. denied*, 582 U.S. 914 (2017); *see also Rossi v. Motion Picture Ass'n of Am.*, 391 F.3d 1000 (9th Cir. 2004). In its recent *Lenz v. Universal Music Corp.* decision, the Ninth Circuit held that Section 512(f) also requires that a DMCA notice submitter like MFB must also proactively consider the potential that similarities in materials are unprotectable. 815 F.3d at 1153-54. Following the Ninth Circuit's lead, courts in this Circuit require plaintiffs to show "actual knowledge," i.e., that the defendants knew that they were making a material misrepresentation in a DMCA takedown notice. *see also Sunny Factory, LLC*, 2022 WL 742429, at *4.

MFB errantly relies on *Hughes v. Benjamin* to convince the Court that Action Care's allegations fail to sufficiently show knowing misrepresentation under § 512(f). 437 F. Supp. 382. In *Hughes*, Defendant Carl Benjamin – a YouTube content creator committed

to anti-ideological and anti-identitarian content – posted a video titled *SJW Levels of Awareness*, made exclusively of clips from plaintiff Akilah Hughes's video *We Thought Should Would Win*. *Id.* at 387. Hughes's 9-minute and 50 seconds video chronicled and reflected on her experience during the 2016 presidential election, attending then-candidate Hillary Clinton's election party. *Id.* Benjamin's video ran for 1-minute and 58 seconds, solely containing clips from Hughes's video. *Id.* at 388. Hughes then submitted a DMCA takedown notice. *Id.* In his DMCA counter notification, Benjamin claimed that his video was not infringing because it was "entirely transformative" and "intended for parody." *Id.* Based on Benjamin's counter notification, Hughes sued for misrepresentation under § 512(f), arguing that the video was not, in fact, transformative. *Id.* The *Hughes* court dismissed Hughes's 512(f) misrepresentation claim because whether the video was "transformative" was factually true, so any suggestion Benjamin's misrepresentation was "implausible" as a matter of law. *Id.* at 395 ("it is self-evident that a statement cannot be a 'misrepresentation' for purposes of 17 U.S.C. § 512(f) if it is factually accurate.") (internal quotation marks omitted).

Here, MFB likens its notification to Benjamin's, and Action Care's 512(f) misrepresentation claim to Hughes's. This differs from Action Care's allegations because MFB's DMCA notification represents that Action Care copied "all" of MFB's Copyrighted Works. (Countercl. ¶ 26). The word "all" means 100 percent, or verbatim. *Tr. of Iron Wkrs. L. 473 P. Tr. v. Allied Prod*, 872 F.2d 208, 213 (7th Cir. 1989). Recalling this Court's finding above that MFB has failed to state a claim for copyright infringement because Action Care's OvuProof materials were not verbatim copies of MFB's Copyrighted Works,

the fact that Action Care copied "all" of MFB's materials is false as a matter of law, rendering Action Care's allegations significantly more plausible than the *Hughes* claimant.

Moreover, as the Ninth Circuit's more recent *Lenz* decision has indicated, the knowledge requirement of Section 512(f) can be met not only through a showing of actual knowledge, but also through a showing of willful blindness. 815 F.3d at 1155; *see also, Global-Tech Appliances, Inc. v. SEB S.A.*, 563 U.S. 754, 766–70 (2011) (clarifying that a statutory knowledge requirement may be satisfied not only by proof that the defendant had actual knowledge of the relevant facts, but also by evidence of the defendant's willful blindness). A person is willfully blind to a fact if the person (1) "subjectively believe[s] that there is a high probability that [the] fact exists" and (2) "take[s] deliberate actions to avoid learning of that fact." *Global-Tech*, 563 U.S. at 769. Willful blindness is legal equivalent to actual knowledge because a defendant "who takes deliberate actions to avoid confirming a high probability of wrongdoing" is as culpable as one who acts with actual knowledge and "can almost be said to have actually known the critical facts." *Id.* Therefore, in addition to actual knowledge of a misrepresentation, a DMCA notice submitter like MFB violates Section 512(f) if the submitter chooses not to "confirm a high probability" that material is not infringing. *Id.*

Various types of behavior can meet this standard. Of note, "'ostrich-like' business practices amount to willful blindness." *Microsoft Corp. v. Rechanik*, 249 F. App'x 476, 479 (7th Cir. 2007). "Conscious avoidance of information is a form of knowledge," and qualifies as ostrich behavior. *Ho v. Donovan*, 569 F.3d 677, 680 (7th Cir. 2009). If a party fails to inquire into relevant circumstances due to a fear "of what the inquiry would yield,"

- 14 -

this also amounts to willful blindness. *Louis Vuitton S.A. v. Lee*, 875 F.2d 584, 590 (7th Cir. 1989).

Although *Lenz* involved a motion for summary judgment, that decision is nevertheless instructive with respect to the issue presently before the Court. *Lenz* supports the conclusion that whether a copyright owner formed a subjective good faith belief is, in most instances, a factual issue that is not appropriate for resolution on a motion to dismiss. 815 F.3d at 1154; *see also ENTTech Media Group LLC v. Okularity, Inc.*, 2021 WL 916307 (C.D. Cal. Mar. 10, 2021) (denying dismissal under 512(f) where plaintiff alleged that the defendant's DMCA notification misrepresented that plaintiff copied intellectual properties "verbatim" without alleging additional facts). "Because the DMCA requires consideration of fair use prior to sending a takedown notification, a jury must determine whether [MFB's] actions were sufficient to form a subjective good faith belief about the video's fair use or lack thereof." *Lenz*, 815 F.3d at 1154.

Applying this logic, a DMCA notice submitter like MFB must proactively consider the potential that similarities in materials are unprotectable. Failure to do so can form the basis of a finding of willful blindness and, therefore, knowledge for purposes of Section 512(f). Action Care alleged that MFB's takedown notice misrepresented that it maintained a subjective good-faith belief that Action Care copied "all" of MFB's wording because there is no genuine indication (see *supra*) that Action Care copied MFB beyond what was medically and legally necessary. (Countercl. ¶¶ 13, 24.). Given the discrepancy between "all" and, apparently, no copying (see *supra*), there is a triable issue as to whether the MFB formed a subjective good faith belief that Action Care's sale of its OvoProof was

infringing, or if instead MFB were willfully blind to the fact that Action Care was not infringing in violation of 512(f). *Lenz*, 815 F.3d at 1151. Thus, Action Care has sufficiently alleged that MFB had the requisite level of knowledge when MFB submitted the DMCA Takedown Notice.

## B. Defamation

### 1. Defamation per se

Counts Two and Three of Action Care's counterclaims allege that MFB committed defamation *per se* and defamation *per quod*. MFB requests that the Court dismiss Action Care's counterclaim for defamation *per se* because the alleged statements were made in anticipation of litigation and are capable of innocent construction. Neither of these arguments justify dismissal.

MFB first points to *The Sunny Factory, LLC v. Chen*, which held that DMCA takedown notices submitted to Amazon are "absolutely privileged" because the notice and takedown period may result in litigation if either party disagrees with Amazon's assessment. 2022 WL 742429, at *3. But the *Sunny* order dismissing plaintiff's claims regarded defendants who were attorneys. *Id.* The Court did not see any problem with awarding default judgment for all The Sunny Factory's alleged claims (including for defamation and defamation *per se*) against the non-attorney (noting that default judgment was granted against Fuxi). *See The Sunny Factory*, 21-CV-3648, Dkt. 21, at *2 (Feb. 16, 2022) (final judgment order against defaulting defendant). Notably, in its order awarding default judgment against the non-attorney defendant, the Court included a mandate enjoining the non-attorney defendant from:

> Knowingly making false, frivolous, and defamatory claims in, on or to the online marketplace Amazon.com ("Amazon") by falsely claiming that Plaintiff markets or sells candles on Amazon.com that infringe on Defaulting Defendant's intellectual property rights in violation of the processes laid out by the Digital Millennium Copyright Act.
>
> (*Id.*)

MFB is neither an attorney nor a law firm. Further, Action Care does not allege that MFB's DMCA Takedown Notice was submitted by an attorney. While Action Care notes that Jeffrey Schell, an intellectual property attorney, is part of MFB's management, Action Care does not allege that Schell was the one who submitted the DMCA Takedown Notice. (*See* Countercl. ¶¶12, 46.) Dismissal under *Sunny Factory* is unwarranted.

MFB's second contention that its DMCA notice could be innocently construed also fails to justify dismissal. While the innocent construction doctrine may serve as a defense in defamation actions, it does not help MFB here. "In considering allegedly defamatory statements under the innocent construction rule, courts must interpret the words 'as they appeared to have been used and according to the idea they intended to convey to the reasonable reader.'" *Giant Screen Sports v. Canadian Imperial Bank*, 553 F.3d 527, 533 (7th Cir. 2009) (quoting *Bryson v. News Am. Publ'n, Inc.*, 174 Ill. 2d 77, 93 (Ill. 1996)). The Court is not obligated to engage in mental gymnastics to find the most innocent possible message. *Giant Screen Sports*, 553 F.3d at 533 ("The rule does not require courts to strain to find an unnatural innocent meaning for a statement when a defamatory meaning is far more reasonable.") (internal quotation marks omitted). Courts are not obligated to be naïve. *Id.* "When a defamatory meaning was clearly intended and conveyed, Illinois courts will not strain to interpret allegedly defamatory words in their

mildest and most inoffensive sense in order to hold them nonlibellous under the innocent construction rule." *Id.* (cleaned up).

MFB latches on to MFB's use of the pronoun "They" (as opposed to "Action Care" or some other specific name) to identify the party who "found a cheap Chinese manufacturer to copy our tests then used all of our wording on the product page and product inserts." (Def's Mot. to Dismiss at 12.) MFB cites to *Milo Enterprises v. Bird-X, Inc.* in support of MFB's position. 2022 WL 874625 (N.D. Ill. Mar. 24, 2022). The main difference between *Milo Enterprises* and the instant case is that the communications with Amazon in *Milo Enterprises* specified multiple people who had engaged in violations. *Id.* Thus, the statements at issue were deemed innocent because it was unclear if it was the plaintiff that was being identified in the allegedly libelous statement. *Id.*, 2022 WL 874625, at *10 ("the innocent construction rule requires the Court to read this statement as referring to the Lius rather than to the plaintiff, Milo.").

Here, the DMCA Takedown Notice does not mention any party by name. It does, however, make it clear that the pronoun "They" refers to the same person as the one who "used all of our wording on the product page and product inserts." Unlike the defendant in *Milo* (who did not initiate that particular litigation), MFB made it abundantly clear whom it had identified in the DMCA Takedown Notice by instituting this suit against solely Action Care. MFB had identified Action Care as the sole alleged infringer of MFB's rights. The only reasonable interpretation of the word "They" in the DMCA Takedown Notice is in relation to the owner of the Amazon listing that was the subject of MFB's

takedown notice and ensuing litigation – Action Care. Hence, Action Care alleged sufficient facts to sustain its claim for defamation *per se*.

### 2. Defamation *per quod*

MFB attacks Action Care's claims for *per quod* defamation by arguing Action Care fails to identify any special damages. Unlike defamation *per se*, where harm to the plaintiff is presumed, defamation *per quod* requires the plaintiff to identify special damages caused by the unprivileged false statement. *See Bryson v. News Am. Publ'n., Inc.*, 174 Ill.2d 77, 103 (Ill. 1996). The Seventh Circuit has clarified that "it is enough to identify a concrete loss" to satisfy requirements of defamation *per quod* claims. *Pippen v. NBC Universal Media, LLC*, 734 F.3d 610, 614 (7th Cir. 2013). It is sufficient to identify "specific business opportunities that had been available to [plaintiff] earlier but that, following the defendants' statements, were available no more." *Id.*

MFB's statements caused Amazon to deactivate Action Care's listing, which in turn "resulted in Action Care's inability to distribute Action Care's Products through Amazon." (Countercl. ¶ 17.) Under the Seventh Circuit's standard, that is sufficient by itself, but Action Care also alleges additional concrete losses. For instance, in the immediate aftermath of the deactivation of Action Care's listing on Amazon, "at least 174 units of Action Care's products [were] stranded or lost." (*Id.* ¶ 18.). Hence, Action Care pleads sufficient injury for purposes of a defamation *per quod* claim in the period between the initial removal of the listing and the brief reinstatement.

## C. Tortious Interference

MFB attempts to dismiss Action Care's counterclaim for tortious interference based on Action Care's alleged failure to identify how MFB engaged in an intentional and unjustified interference with Action Care's economic advantage. (Def's Mot. to Dismiss at 9.) MFB correctly names the four elements of a tortious interference claim under Illinois law, of which the existence of an intentional and unjustified interference is just one sub-element. *Holbrook Mfg. Ltd. Liab. Co. v. Rhyno Mfg.*, 497 F. Supp. 3d 319, 337 (N.D. Ill. 2020) (citing *Foster v. Principal Life Ins. Co.*, 806 F.3d 967, 971 (7th Cir. 2015). The Court therefore construes MFB's silence with respect to the other elements as conceding that Action Care has sufficiently pleaded those other elements.

The Seventh Circuit has explicitly acknowledged that an attempt to prevent product distribution by contacting a third party and asserting meritless copyright claims leads to exposure for tortious interference. *See Klinger v. Conan Doyle Estate, Ltd.*, 755 F.3d 496, 499 (7th Cir. 2014). In *Klinger*, the Conan Doyle estate attempted to stop a writer's use of public domain content. *Id.* The estate sought to prevent distribution of Klinger's book "by asking Amazon and other big book retailers not to carry it." *Id.* The Seventh Circuit determined that "Klinger could have sued the estate for having committed tortious interference with advantageous business relations by intimidating his publisher." *Id.* In a subsequent order awarding attorneys' fees to Klinger, the Seventh Circuit noted that "the estate was playing with fire in asking Amazon and other booksellers to cooperate with it in enforcing its nonexistent copyright claims against Klinger." 761 F.3d 789, 792 (7th Cir. 2014). The court equated the Doyle estate's actions to an attempt to cause a

boycott of Klinger's products by enlisting Klinger's "suppliers of essential distribution services." *Id.*

Here, MFB also communicated with Amazon – a supplier of essential distribution services for Action Care. (Countercl. ¶¶ 10–12.) The underlying implication with any DMCA takedown notice is that if the online service provider (OSP) like Amazon does not comply with the takedown notice, the OSP will expose itself to a lawsuit. *See In re Aimster Copyright Litig.*, 334 F.3d 643, 655 (7th Cir. 2003) ("The common element of [the DMCA's] safe harbors is that the service provider must do what it can reasonably be asked to do to prevent the use of its service by 'repeat infringers.'"). As a result, the submission of the allegedly bogus DMCA Takedown Notice effectively operated as a threat to sue Amazon if Amazon failed to acquiesce to MFB's demand to prevent OvuProof's listing. As discussed, MFB's copyright infringement claim fails because there is no substantial similarity as a matter of law with respect to the protectable elements contained in MFB's work. Unprotectable elements in a work are available for use by any party and are the equivalent of the public domain materials at issue in *Klinger*. 761 F.3d 789; *see Hotaling & Co., LLV v. LY Berditchev Corp.*, 2022 WL 1134851, at *4 (D.N.J. Apr. 18, 2022) ("The Court agrees . . . that factual disputes regarding the validity of Plaintiffs' complaints to Amazon are inappropriate for resolution at the pleadings stage.") A reasonable inference can be made that MFB's DMCA "threat" was unjustified sufficient to state a claim for tortious interference.

As for the intentionality of MFB's conduct, MFB wanted to cause the immediate removal of Action Care's Amazon product listing. By abusing the takedown process – that

is, filing a DMCA notice without a good faith belief that Action Care infringed on MFB's Copyrighted Works – MFB exposed its intent. Construing the facts in a light most favorable to Action Care, MFB's motion relating to Action Care's tortious interference counterclaim must be denied. A claim has been stated.

### D. Trademark Cancellation

Finally, Count V of Action Care's counterclaims for Cancellation should be dismissed for failure to state a claim. If, as here, the disputed mark (MFB's PROOV mark) has been registered for 5 years or fewer, any grounds may be stated for cancellation, including traditional arguments such as likelihood of confusion, false identification, or that the mark is merely descriptive. 15 U.S.C § 1064(1); *Eagle Forum v. Phyllis Schlafly's Am. Eagles*, 2017 WL 4785792 (S.D. Ill. Oct. 20, 2017).

Action Care has failed to allege that a likelihood of confusion exists between MFB's registered trademark PROOV, and Action Care's "OVUPROOF" product name. To the contrary, Action Care has asserted there is no likelihood of confusion between the marks at issue: "MFB's trademark infringement claim fails because the PROOV mark and the OVUPROOF mark differ in the numbers of syllables, spellings, and overall impressions, such that there is no likelihood of consumer confusion." (Countercl. ¶ 19). Action Care's assertion of no likelihood of confusion therefore contradicts its pleading that the registration of the PROOV trademark "is causing irreparable harm to Action Care." (Countercl. ¶ 62). Thus, Action Care has not pleaded facts to confer standing. Action Care's Counterclaim for Cancellation is dismissed.

## V. CONCLUSION

For the reasons stated above, Defendant's Motion to Dismiss is fully GRANTED (Dkt. No. 10), Plaintiff's Motion to Dismiss partially GRANTED (Dkt. No. 31). Plaintiff's Motion to Amend is DENIED as moot (Dkt. No. 22).

**IT IS SO ORDERED.**

_____
Harry D. Leinenweber, Judge
United States District Court

Dated: 4/22/2024