UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF ILLINOIS, EASTERN DIVISION

| | |
|---|---|
| JOSE LUIS ACOSTA, et al.,<br><br>    Plaintiffs,<br><br>v.<br><br>BOARD OF TRUSTEES OF UNITE HERE HEALTH, et al.,<br><br>    Defendants. | Case No.: 1:22-CV-01458<br><br>Honorable Rebecca R. Pallmeyer<br>Magistrate Judge Young B. Kim |

**OPPOSITION TO DEFENDANTS' MOTION FOR CONTEMPT AND SANCTIONS**

Non-party Unite Here Local 11 ("Local 11") and its legal counsel oppose the Motion for Contempt and Sanctions brought by Defendants, Board of Trustees of Unite Here Health ("UHH").

**Introduction**

Local 11 represents workers employed in hotels, restaurants, airports, sports arenas, and convention centers. Local 11's stated purpose is to improve the living standards and working conditions of its worker members through collective bargaining. Local 11 is a not-for-profit membership organization run on a limited budget funded by the union dues paid by hospitality workers. Local 11's budget does not allow for a state-of-the-art document management system. Without the resources to modernize antiquated systems, Local 11 faces special challenges in responding to third-party subpoenas requiring it to identify and assemble nearly a decade of documents, search these records, accumulate potentially responsive documents, review these documents, and then produce documents to UHH. Further complicating this process, the employee with the most knowledge about Local 11's records left the organization in September 2024. Despite these challenges, Local 11 and its counsel have worked diligently and in good faith to comply with the Court's October 1, 2024 order requiring production ("Court Order").

The Court Order required production by November 8, 2024. Local 11 substantially complied by producing 7,937 pages of responsive documents on November 8. The complexity and breadth of the categories of documents subpoenaed by UHH, coupled with the challenges discussed above, prevented Local 11 from completing the production on November 8. Although UHH immediately resorted to this Motion for Contempt and Sanctions, Local 11 continued to work to produce responsive documents in a timely manner. The breadth of the requests covered several different record keeping protocols observed by Local 11, and through the due diligence process, Local 11 learned that deeper inquiry was required which revealed additional potentially responsive records. This necessarily meant the documents would be produced in stages. On November 22, Local 11 produced an additional 8,081 pages of responsive documents, and on December 5, Local 11 produced an additional 1,098 pages of responsive documents.

On November 20, UHH filed this Motion pursuant Federal Rules of Civil Procedure 37, 45, and 26. Under these Rules, UHH must show that Local 11 and its counsel's failures were substantial and that they failed to make a reasonable and diligent effort to comply. As set forth in the Opposition and the Declarations of Jeremy Blasi and J. Paul Moorhead, Local 11 and counsel both worked to timely produced a substantial amount of documents and acted reasonably and diligently to produce the remaining documents. Local 11 and its counsel request that UHH's Motion for Contempt and Sanctions be denied.

## Background and Discussion of Document Production

1. **Subpoena and Initial Production.**

On August 4, 2023, UHH served Local 11 with a subpoena demanding production of 84 separate categories of documents. The subpoena cross-referenced to the Complaint in this matter, a document spanning over 1,650 pages (with exhibits). As examples of UHH's extensive demands,

request 4 sought "[A]ll documents concerning this Action not encompassed by other Requests," and request number 47 sought "all documents concerning [UHH] not encompassed by other Requests." Local 11 provided written objections, asserting that many of the demands sought "documents that are not relevant to any party's claims or defenses, and/or are not proportional to the needs of the case." Despite UHH's overbroad requests, Local 11 attempted to comply with its obligations by producing 1,770 pages of responsive documents while conferring with UHH. During subsequent meet and confer efforts, UHH refused to meaningfully narrow its requests.

**2.     UHH's Motion to Compel, the October 1, 2024 Hearing, and the Court Order.**

Although Local 11 served its amended responses and objections in November 2023, UHH waited nearly 6 months, until May 2024, before filing a motion to compel further production of documents. At the October 1 hearing on UHH's motion ("Hearing") the Court granted in part and denied in part UHH's motion. The Court issued a written minute order, but during the hearing the Court made clear that the parties should rely on the transcript for specific details of the order[1]. The Court Order required Local 11 to produce as follows:

| Request # | Order to Produce: |
|---|---|
| 2 | Provide a declaration including: (a) Plaintiffs' positions/roles within Local 11 (e.g., leadership positions, committee membership) from January 1, 2010, to the present and the dates of those positions; and (b) a description of their involvement with any collective bargaining agreement negotiations with any employer whose employees received medical benefits through Plan Units 178 and 278 from January 1, 2016, and the present. |
| 70 | Communications with Local 11 members concerning this Action. The transcript indicates the order is limited to "general communications with members, something that is going out to all the members and not any specific member." [Page 65.] |
| 71 | Minutes of the executive committee of Local 11 concerning this Action. The transcript indicates "that portion [of the Minutes] not dealing with this action can be redacted because that's not responsive to this request." [Page 66.] |

---

[1] The transcript states "my plan is to summarize the Court's rulings from the bench in a minute order; but whatever the transcript says … basically controls." [Page 95.]

| | |
|---|---|
| 19 | Documents concerning requests or demands by UHH that any employer participating in Plan Unit 178 or 278 increase its Employer Contribution Rate to satisfy UHH's minimum required contribution rates. The transcript indicates the order is limited to "documents showing that UHH said it's a minimum required contribution rate." [Pages 94-95.] |
| 21 | Documents concerning Local 11's role in determining Employer Contribution Rates for a Participating Employer, including, but not limited to, documents concerning any request by Local 11 to allocate Employer Contributions to UHH in an amount exceeding the Employer Contribution Rate requested by UHH. Responsive documents limited to March 21, 2016 to current. |
| 28 | Documents concerning why an employer and Local 11 should or should not bargain into UHH. |
| 40 | Documents concerning any connection or correlation between Plaintiffs' wages and UHH's assessment or allocation of Administrative Expenses. |
| 41 | Documents concerning the Administrative Expenses of multiemployer welfare plans other than UHH, including, but not limited to, the multiemployer welfare plans identified in Paragraphs 144 and 151 of the Complaint. |
| 78 | All documents concerning the difference in Administrative Expenses for self-insured plans and fully-insured plans. The transcript indicates the order is limited to documents reflecting what was said in the following statement made by Local 11 in the 12/9/2021 letter from Michael Weiner (Local 11 counsel) to Dharma Patel (UHH general counsel):<br><br>Worse still, the administrative expenses of Plan Units 178 and 278 are substantially greater than the expenses associated with large, self-insured plans. A self-insured plan is inherently more expensive to administer than a fully-insured plan because of, among other reasons, the higher cost of processing claims and handling appeals. Yet the analysis prepared by Local 11's consulting firm found that the average annual administrative expenses for multiemployer plans in which less than 30 percent of the benefits are paid for through insurance contracts are $734 per participant.<br><br>The Court asked Local 11 to produce documents "showing the difference in the expenses for self-insured plans and fully insure plans. … I'm not asking for the communications with the attorneys, but I am asking for the underlying documents saying the expense difference." [Pages 126-127.] |
| 50 | Communications with Local 11 members concerning the Santa Monica Fund, including, but not limited to, discussions about benefits, alternatives, and recommendations. The transcript indicates the order is "limited to communications that are sent generally to the members. … I'm not looking for communications sent to any specific member regarding the Santa Monica Fund. I'm talking about informational letters, emails, sent to the members of Local 11 pertaining to the Santa Monica Fund." [Page 127.] |
| 56 | Minutes of any bargaining or negotiating committee concerning whether to bargain an employer into UHH or the Santa Monica Fund. |

| 57 | Communications with employers regarding switching from UHH to the Santa Monica Fund. |

There was no discussion during the Hearing regarding a deadline for Local 11 to produce documents; however, the written Order required compliance by November 8, 2024.

**3.      Local 11's Efforts to Comply with the Court Order and Produce Documents.**

The day after the Hearing, Local 11's counsel sent Local 11 a copy of the Court Order as well as counsel's notes from the Hearing. Local 11, its outside IT vendor, and counsel developed a plan to comply with the Order. This included analyzing Local 11's maintenance of electronic and physical records, identifying the Local 11 employees (custodians) who would have sent or received responsive emails or maintained responsive documents, and developing reasonable yet inclusive search terms based on the Order. Local 11 then began searching, assembling, and reviewing responsive documents. However, Local's 11 lack of a sophisticated document management system required certain manual searches and greater use of the IT vendor. The process was made more cumbersome because the Local 11 employee with the most knowledge of the organization's records recently left Local 11 and was unavailable to assist. Despite these challenges, Local 11 and its counsel sought to comply with the Court Order. [Decl. Blasi: ¶3; Decl. Moorhead: ¶3.]

Local 11, its General Counsel, and outside litigation counsel acted diligently to comply with the November 8 deadline. Local 11 maintains an email system for use by its employees. Different rules for the deletion of emails have been adopted at particular times for particular email accountholders or in the event of a litigation hold. As a result, the emails that have been retained over the past decade vary between email accounts. After receiving the subpoena, Local 11 learned that a very large volume of emails that Local 11 believed had previously been deleted were in fact maintained on a Google Vault Drive. Local 11 backed up all of the records in employee email

accounts and those in the Drive, so that all of these records would be available for production pursuant to any future court order. Subsequently, Local 11 included all emails for relevant custodians on the Google Vault Drive, as well as all such emails in its system, as part of the overall universe of email to be searched pursuant to the Court Order. [Decl. Blasi: ¶4.]

In addition to emails, Local 11 produced other responsive documents such as meeting minutes, mass text messages sent to its membership, financial records, and collective bargaining agreements. As a membership organization focused on protecting worker rights and funded solely by dues, Local 11 faced special challenges with an antiquated document system and limited staff to access it. Local 11 worked diligently to locate, assemble, review, and ultimately produce responsive documents. Including the declaration pursuant to Request 2, the Court Order included twelve (12) categories of documents. As to five categories (Requests 2, 40, 56, 70, and 71), Local 11 complied with the November 8 deadline. As to four categories (Requests 19, 21, 28, and 57), Local 11 produced a portion of the responsive documents by November 8. As to three categories (Requests 41, 50 and 78), Local 11 was unable to meet the deadline. [Decl. Blasi: ¶¶5-11.]

On November 8, Local 11 produced 7,937 pages of responsive documents. At that time Local 11 also made clear its intent to produce the remaining documents in a timely manner. On the evening of November 12, counsel for UHH outlined inadequacies in Local 11's production and demanded a response by November 13, at noon, or face a contempt motion. On November 13, counsel for Local 11 reiterated Local 11's commitment to producing responsive documents and that it intended to produce additional documents by November 21. Despite Local 11's commitment to produce additional documents, UHH filed this Motion for Contempt and Sanctions on November 20. [Decl. Moorhead: ¶¶4-6.]

After UHH filed its Motion, Local 11 continued its efforts to produce documents. On November 22, Local 11 produced an additional 8,081 pages of responsive documents. Finally, on December 5, Local 11 produced 1,098 pages of responsive documents. Through date of this declaration, Local 11 has produced to UHH 18,916 pages of responsive documents. [Decl. Moorhead: ¶7.] Below is a more detailed discussion, by category, of Local 11's production of further responsive documents. [Decl. Blasi: ¶¶5-11.]

<u>Request 2</u>

On November 8, Local 11 provided UHH with the required declaration.

<u>Request 71</u>

On November 8, Local 11 produced responsive documents.

<u>Request 40, 56, and 70</u>

On November 8, Local 11 notified UHH that after a diligent search, it had not identified any responsive documents to these Requests.

<u>Request 50</u>

On November 8, Local 11 notified UHH that it had not identified any responsive documents to this Request. However, after further review Local 11 recognized it had access to mass text messages sent to its members. Local 11 searched for messages regarding the Santa Monica Fund and produced these communications on December 5. Local 11 has no other documents responsive to this Request.

<u>Requests 19, 21, 28, and 57</u>

Local 11 determined that accessing the universe of emails responsive to Requests 19, 21, 28, and 57 required further professional third party vendor support to assemble the emails from the identified custodians and import those emails into a system where they could be searched.

Local 11 then ran searches to identify the emails (and attachments) responsive to Requests 19, 21, 28, 57. These searches produced a large volume of documents. Local 11 endeavored to review each and every one of the documents. Based on Local 11's limited resources, this review was accomplished by Local 11's General Counsel and two Local 11 employees (as opposed to Local 11's vendors or outside attorneys). Based on Local 11's other obligations to its worker members, Local 11 was not able to commit additional resources (whether it be assigning additional staff, or budgeting money to outside sources) to the project.

Despite these limitations, Local 11 believed this project could be completed in time to comply with the November 8 deadline. However, shortly before the deadline Local 11 realized the volume of documents to review was simply too much. Accordingly, Local 11 focused on finalizing a select portion of the documents that had been reviewed. This included documents from 2016 through 2019. These documents were produced on November 8. Local 11 continued to review and assemble responsive documents from 2020 through the date of the Court Order, and worked in good faith to produce these documents in a timely manner. This review was completed on or about November 20. These documents were produced on November 22.

During the Hearing, there was discussion of emails maintained on private accounts held by Local 11's Co-Presidents. On November 18, the Court denied UHH's motion to compel against the Co-Presidents (Docket # 183), but ruled that the Court Order requiring production by Local 11 also requires production by the Co-Presidents. Local 11 performed a search of two additional personal email addresses used at various times by two of the Co-Presidents. Local 11 also confirmed that the third Co-President does not use a personal email address to conduct business on behalf of Local 11. The minimal documents obtained from the two Co-Presidents personal email addresses were produced on December 5.

Requests 41 and 78

These Requests sought documents concerning Administrative Expenses of multiemployer welfare plans other than UHH, and documents concerning the difference in Administrative Expenses for self-insured plans and fully-insured plans. These underlying documents include the data on which Plaintiffs purportedly make certain allegations against UHH. Local 11 initially did not believe it has custody or control of responsive documents, but later became aware of such documents. It took additional time to locate, assemble, and review these documents. While Local 11 was unable to complete the process by November 8, the responsive documents were produced on November 22.

## Legal Standard

UHH cites Federal Rules of Civil Procedure 37, 45, and 26 in support of its request for contempt and sanctions. The relevant legal standards are discussed below.

Federal Rule of Civil Procedure 37(b)(2)(A) provides that a court "may" find contempt "[i]f a party or a party's officer, director, or managing agent--or a witness designated under Rule 30(b)(6) or 31(a)(4)--fails to obey an order to provide or permit discovery, including an order under Rule 26(f), 35, or 37(a) … ." *Id*. "Instead of or in addition to" that finding, "the court must order the disobedient party, the attorney advising that party, or both to pay the reasonable expenses, including attorney's fees, caused by the failure, unless the failure was substantially justified or other circumstances make an award of expenses unjust." *Id*. 37(b)(2)(C). UHH cites *Manez v. Bridgestone Firestone N. Am. Tire, LLC*, 533 F.3d 578 (7th Cir. 2008) for the generalized observation that Rule 37(b) "provides for sanctions against either parties or nonparties." *Id*. at 591 (dicta). However, *Manez* in no way clearly suggests that Rule 37(b) applies to any nonparties other than those expressly listed in the Rule's text, since the absence of a court order obviated squarely

deciding whether Rule 37(b) would apply, *were* there a court order, to the nonparty affiant facing potential sanctions in that case. *See id*. at 584-85, 591. Nor does it suggest the rule applies to an attorney advising a non-party. UHH's Motion fails to properly analyze application of Rule 37(b) to Local 11 as a nonparty.

Federal Rule of Civil Procedure 45(g) provides that the court "may hold in contempt a person who, having been served, fails without adequate excuse to obey [a] subpoena or an order related to it." Fed. R. Civ. P. 45(g). A party moving for civil contempt "must establish by clear and convincing evidence that (1) a court order sets forth an unambiguous command; (2) the alleged contemnor violated that command; (3) the violation was significant, meaning the alleged contemnor did not substantially comply with the order; and (4) the alleged contemnor failed to make a reasonable and diligent effort to comply." *U.S. S.E.C. v. Hyatt*, 621 F.3d 687, 692 (7th Cir. 2010). "Civil contempt is a 'severe remedy' that 'should not be resorted to where there is a *fair ground of doubt* as to the wrongfulness of the defendant's conduct.'" *Life Spine, Inc. v. Aegis Spine, Inc.*, 2023 WL 4002285, at *2 (N.D. Ill. June 14, 2023) (quoting *Taggart v. Lorenzen*, 139 S. Ct. 1795, 1801-02 (2019) (emphasis in original)). Consistent with this generally applicable standard, courts have found that a contempt finding under Rule 37(b)(2) is not warranted where failure to comply with a court order was "through neglect," rather than "willful or in bad faith." *Cozad v. Illinois Dep't of Corr.*, 2017 WL 9516611, at *2 (C.D. Ill. Aug. 22, 2017).

The statutory language of Federal Rule of Civil Procedure 26(g) applies only to parties. This counsel has not located any 7th Circuit authority for sanctioning nonparties or their counsel under Rule 26(g). However, in *NML Cap. Ltd. v. Republic of Argentina*, 2014 WL 3898021, at *7-*8 (D. Nev. Aug. 11, 2014), the court indicated that this Rule does not apply to nonparties' counsel because "Rule 26(g)'s plain language limits its applicability to parties … no court appears to have

extended Rule 26(g)'s affirmative obligations to subpoenaed nonparties." See also *In re Chester Cnty. Elec., Inc.*, 208 F.R.D. 545, 548 (E.D. Pa. 2002) (dicta) (citation omitted) (sanctions under Rule 26(g) require "a party." A 'party' … refers to those by or against whom a legal suit is brought . . . all others who may be affected by the suit, indirectly or consequently, are persons interested but not parties."). Rule 26(g) requires that discovery responses "be signed by at least one attorney of record," whereby that attorney certifies that they have performed a reasonable inquiry before responding. Fed. R. Civ. P. 26(g). In making this inquiry, the "attorney may rely on assertions by the client and on communications with other counsel in the case as long as that reliance is appropriate under the circumstances." *LKQ Corp. v. Kia Motors Am., Inc.*, 345 F.R.D. 152, 160 (N.D. Ill. 2023). "Where a certification violates Rule 26(g) 'without substantial justification, the court, on motion or on its own, must impose an appropriate sanction on the signer, the party on whose behalf the signer was acting, or both.'" *Id.* at 160 (emphasis omitted).

<u>Argument</u>

1.  **Contempt and sanctions are inappropriate because Local 11 and its counsel made a reasonable and diligent effort to timely comply with the Court Order, and have now complied.**

UHH's Motion insinuates that contempt and sanctions are mandatory when a nonparty fails to fully comply with an order to produce documents. Motion at p. 7. This suggestion has no legal support. Civil contempt – under Rule 45 or otherwise – is warranted only where there was neither substantial compliance nor a reasonable and diligent effort. Rule 26(g) allows for sanctions only where the failure was not substantially justified. Sanctions under Rule 37(b)(2)(c) are not required if "the failure was substantially justified or other circumstances make an award of expenses unjust." Courts have suggested that this provision incorporates a negligence standard. E.g. *Little*

*v. JB Pritzker for Governor*, 2021 WL 1165097, at *6 (N.D. Ill. Mar. 26, 2021) ("negligence may be a sufficient degree of fault to impose fee-shifting sanctions.")

Here there was not just good faith, but also a reasonable and diligent effort to comply. Local 11 conscientiously responded to an overbroad, burdensome and hopelessly vague discovery shotgun.[2] The Court Order narrowed the subpoena from its original 84 requests down to 12 categories of documents to be produced by Local 11. The day after the Hearing, counsel sent the Court Order to Local 11 and immediately began devising a plan to comply with the Court Order. This included further efforts to: (1) determine all possible sources/locations of potentially responsive documents, (2) develop procedures for searching, assembling, and reviewing documents, and (3) retention of an outside vendor who charged over $15,000 for its services, a significant cost for Local 11. Local 11 not only searched readily available documents, it also recovered documents that it previously understood had been deleted, but were in fact backed-up on a Google Vault Drive. Local 11 was not negligent in its response to the Court Order. Despite the limitations described in Jeremy Blasi's declaration, Local 11 responded to the Court Order with the level of care a reasonable party would exercise in this situation.

As a non-profit funded by membership dues, Local 11 could not allocate unlimited resources to this project. The task was completed by Local 11's General Counsel, Jeremy Blasi, and two Local 11 employees. Local 11 did not have additional staff to commit to the project, nor did it have available resources to write a blank check to vendors and outside lawyers. While Local

---

[2] During the Hearing, UHH's counsel admitted that the subpoena included "catch-all" requests. When pressed by the Court, counsel admitted a request was "overbroad," but that UHH "figured we would engage in a … meet-and-confer." The Court responded, "I think that's the problem with discovery requests being too overbroad. I don't think Rule 34, Rule 33, Rule 45, say anything about a starting point. And a meet-and confer is really limited to working out genuine disputes." [Transcript: Page 128-129.]

11 initially thought the project could be completed by November 8, it realized the volume of documents to review was too much. Local 11 substantially complied by producing the available responsive documents, consisting of over 7,937 pages, by November 8. Concurrent with this production, Local 11 counsel notified UHH that it would produce the remaining documents in a timely manner. Local 11 continued to review and assemble responsive documents. On November 22, Local 11 produced an additional 8,081 pages of responsive documents, and on December 5, Local 11 produced an additional 1,098 pages of responsive documents.

This explanation and timeline show that Local 11 and its counsel have worked hard to fully comply with the Court Order. While Local 11 produced a substantial volume of documents by the deadline, it was unable to fully comply by November 8. In the end, Local 11 overcame these limitations by continuing its reasonable and diligent efforts to comply and producing all known documents by December 5. Contempt and sanctions are not appropriate in this matter.

UHH argues the Court should award sanctions measured by the legal expenses it incurred in filing this Motion and its motion for postponement of ruling on class certification. [Docket #182.] However, since this Motion should be denied, so should UHH's request for the related expenses. As to UHH's request related to the motion for postponement, that motion was denied by Judge Pallmeyer. [Docket #187 "the court is uncertain that the materials Defendant seeks in discovery are relevant to class certification issues. The motion for postponement [182] is denied."] An award of UHH's expenses in bringing a motion that was denied by the Court are in inappropriate form of sanctions.

2. **Local 11 has produced responsive emails; it is not hiding emails as alleged by UHH.**

UHH asserts that Local 11 must have failed to perform a diligent search because its production lacks a chain of emails from 2017 between UHH and Local 11. The declaration of

General Counsel Jeremy Blasi explains that none of the emails referenced by UHH are in the possession, custody, or control of Local 11. Mr. Blasi also explains that because of Local 11's variable retention policies in the past, the emails that have been retained over the past decade are not consistent. After receiving the subpoena, Local 11 took diligent efforts to back up the records in employee email accounts, as well as those in the Google Vault Drive, so they would be available for any future production in this matter. Local 11 is confident that the emails referenced in UHH's motion are not in Local 11's possession, custody, or control, and that if Local 11 previously had these emails but deleted them, this was done prior to service of UHH's subpoena. [Decl. Blasi: ¶12; Decl. Moorhead: ¶5.]

UHH argues that when it pointed out the "missing email," counsel for Local 11 "nonchalantly responded that is was not surprising that an email from seven years ago was deleted." But the email chain attached as Exhibit B to UHH's Motion shows that UHH counsel pointed out the missing email on November 12 at 7:02 PM, and demanded a response by November 13 at noon. This gave Local 11's counsel very little time to discuss the issue with Local 11. Counsel was able to show the missing email to Local 11 prior to UHH's deadline, and was notified that based on retention policies Local 11 was not surprised that a single email from 2017 was missing. Neither counsel nor Local 11 was able to confirm, within the 17 hours afforded by UHH, whether or not the email was maintained in Local 11's system. However, Mr. Blasi declaration provides this information. [Decl. Blasi: ¶12; Decl. Moorhead: ¶5.]

Local 11 has not hid or deleted responsive emails after service of the subpoena. Counsel acted diligently, and in good faith based on available information in communicating with UHH's counsel. UHH's request for contempt and sanctions should be denied.

## CONCLUSION

Local 11 admittedly has an antiquated document management system. The employee with the most knowledge of Local 11's records recently left the organization. This made timely compliance with the Court Order very difficult. Despite these challenges, Local 11 and its counsel worked diligently and in good faith to produce documents in a timely manner. Local 11 substantially complied by producing a large volume of pages of responsive documents by the deadline. Although UHH immediately resorted to this Motion for Contempt and Sanctions, Local 11 continued to engage and provide further responsive documents in addition to the thousands of records previously produced. This production was completed by December 5. Neither Local 11 nor its counsel should be sanctioned or found in contempt, because they made reasonable and diligent efforts to comply in a timely manner and have now complied with the Court Order. Local 11 and its counsel request that UHH's Motion for Contempt and Sanctions be denied.

Date: December 6, 2024

Respectfully submitted,

**UNITED HERE LOCAL 11**

By: */s/ J. Paul Moorhead*
Peter S. Dickinson (pdickinson@bushgottlieb.com);
J. Paul Moorhead (pmoorhead@bushgottlieb.com)
Luke Taylor (ltaylor@bushgottlieb.com)
BUSH GOTTLIEB, A LAW CORPORATION
801 North Brand Boulevard, Suite 950
Glendale, CA 91203